

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

JAN A. LINDSEY )
         Appellant, )
                                 CV-S-02-0401-KJD-RJJ
v. )
)
UNITED STATES OF AMERICA )
         Appellee. )

## APPEAL TO REQUEST THAT THIS COURT SET ASIDE AN INVALID COLLECTION DUE PROCESS "DETERMINATION" LAWLESSLY ISSUED PURSUANT TO 26 USC 6330

COMES NOW, JAN A. LINDSEY, hereinafter referred to as "Appellant"in this action, invoking the jurisdiction of this Court pursuant to 26 USC 6330 (d)(1)(A) to set aside the "Determination" at issue and award Appellant costs and damages as the result of Appellee having compelled Appellant to expend needless time, energy and money to bring this unnecessary action. The "determination" at issue, (Exhibit A) was dated  February 21, 2002 and was issued by employees of the Appellee, in response to Appellant's request for a "Collection Due Process Hearing."  That "determination" was issued in violation of law, as the following will show.

1) On January 8, 2001 Appellant  requested the Collection Due Process Hearing (CDP) guaranteed to him in 26 USC § 6330(b) captioned: "Right to fair hearing"(Exhibit(B).

2) The "hearing" purportedly concerned whether or not the United States could lawfully recommend Appellant's property be seized,  pursuant to Internal Revenue Code (IRC) Section 6331, in connection with a $500 frivolous "penalty" pursuant to §6702, which had been imposed and assessed by employees of the United States, even though no court order, writ of garnishment or writ of attachment had ever been issued by any court of law with respect to any of Appellant's property.[1]

---

[1] Apparently the United States of America no longer feels constrained by the "Due Process" clause of the Constitution.

3) The "penalty," which the United States has unlawfully assessed and now seeks to extract by distraint, is not supported by any *testimony* nor does any *documented* evidence support it, as those terms are legally understood. [2]

4) As the attached transcript shows (Exhibit C), Appellee's employees did not conduct the hearing at issue in accordance with either the law (26 USC 6330) or with Treasury Regulation 301.6330-1. *There was no independent, unbiased Appeals Officer with the required lawful delegated authority from the Secretary of the Treasury present at the hearing on behalf of the United States as specified in Sections 6320 and 6330. In fact settlement employees, conducted the hearing, (no due process afforded), all in violation of lawful requirements, supra.*

5) Congress enacted the "hearing" in question as a result of disclosures emanating from the Senate Finance Committee's 1997 investigation of the Internal Revenue Service (IRS), which revealed widespread, lawless IRS seizures of property and extensive violations of taxpayers' rights.[3]

6) Section 6330(a)(1) provides, in pertinent part, that "No levy may be made on any property or right to property of any person unless *the Secretary* has notified such person in writing of their right to a hearing under this section before such levy is made."(Emphasis added)

7) Section 6330(c)(1) provides "The appeals officer **shall at the hearing obtain verification from the Secretary** that the requirements of any applicable law or administrative procedure have been met."(Emphasis added)

8) Section 6330(c)(2) provides that "The person may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy..."

---

[2] One wonders, therefore, why the United States bothers to conduct CDP hearings? Why doesn't it just impose penalties (both civil and criminal) as it did in the instant case, and extract the penalties imposed without holding CDP hearings or gathering evidence of any kind?

[3] Senator William Roth, who was then Chairman of the Committee, wrote a book based on those hearings, entitled "The Power to Destroy (Atlantic Monthly Press, New York City, 1999) which states, on page 73, "The Internal Revenue Service itself admit that far too many of the countless assessments, seizures, levies, and liens that the IRS executes each year are inappropriate and in open violation of law." The first "bullet" on the book's dust jacket states that the book reveals "How the IRS ...plays judge, jury, and executioner, depriving countless taxpayers of basic rights." Examples of such criminal IRS behavior (i.e. criminal United States behavior) are strewn liberally throughout the book.

9) Section 6330(c)(2)(B) provides that "The person may also raise at the hearing challenges to the existence…of the underlying tax liability" if the person "did not receive any statutory notice of deficiency for such tax liability…"

10) Section 6330(c)(3)(A) specifically states (in pertinent part) that the "determination by an "appeals" officer under this subsection shall take into consideration – (A) the verification *presented* (by the Secretary) under paragraph (1). **Requirement of investigation.**" (Emphasis added)

11) In accordance with provisions of Section 6330, Appellant sent in a timely request for a CDP hearing (Exhibit B)

12) As shown in Exhibit F, Appellant, via prior written request, asked that the appeals officer produce at the hearing:

    a)   The "verification *from the Secretary* that the requirement of any applicable law or administrative procedure have been met" as required by 6330(c)(1).

    b)   The document that supported the imposition of the penalty (such as IRS Form 330 attached as Exhibit D) or the "signed" document as referred to in 26 USC 6751(b)) which would reveal the names of the Appellee's employees who imposed the "frivolous" penalty *(providing a basis for determining if those employees so revealed are empowered by delegated authority from the Secretary of Treasury)*.

    c)   The Federal EID numbers of the Appellee's employees who imposed the "frivolous penalty."

    d)   The *Delegation Orders from the Secretary* delegating Treasury Department authority to those Appellee employees who imposed the "frivolous penalty".[4]

    e)   The official job description(s) of those IRS employees who imposed the "frivolous" penalty. (Footnote #4 was also applicable to this request)

---

[4] In making his request, Appellant was *guided* by the advise of the Supreme Court who *warned* in **Federal Crop Insurance v. A.A. Merrill,** *332 US 380* that those who "Enter into an arrangement with the government take a risk" if they do not "ascertain" that those who "purport" to "act for the government stay within the bounds of their authority." (Citations omitted). In addition, Appellee's Solicitor General argued in this case, "Those dealing with an officer or agent of the United States must be held to have had notice of the limitations upon his authority." Therefore, based on the Supreme Court's *warning,* and the *expectations* of Appellee's Solicitor General, the Appellee was <u>duty bound</u> to produce the Delegation Orders requested.

f)   Appellant requested the appeals officer to identify or produce the Treasury
Department regulation that allows Appellees' employees to impose the
"frivolous" penalty, and *the regulation* that required Appellant to pay such a
penalty. Internal Revenue Code Sections 6001 and 6011 (Code Sections to
which the public is specifically directed to in the Privacy Act Notice in the
1040 booklet) advises the public that they need only *"comply with
regulations".*

g)   Appellant also notified Appellee's employees, in Apellant's written request,
that at the hearing, Appellant would challenge the "existence of the underlying
liability" of the tax that generated the "frivolous penalty" as he was authorized
to do by Code Section 6330(c)(2)(B), and which the Code specifically allows
the Appellant to do in the absence of a Deficiency Notice with respect to such
a "tax liability". Appellant has **never** received such Deficiency Notice with
respect to a purported "tax liability"

h)   No provision in 26 USC 6330 was found that provides authority for Appeals
officers to dictate conditions under which they will agree to conduct the CDP
hearings required by law, or that allows them to dictate to taxpayers the issues
they will consider at the hearings prior to the CDP hearings being held.

13) Appellant received letter dated June 13, 2001 from Appeals officer ANTHONY
MARTINEZ arbitrarily scheduling a conference for " Due Process Hearing" on July
12, 2001 at 11:00 a.m (Exhibit E). Note in the first paragraph, MARTINEZ dictates,
"It is *my determination* that your reasons for disagreeing with the proposed
enforcement actions are frivolous and without merit". In effect, MARTINEZ had
already made up his mind prior to any hearing being conducted as authorized by
6330. Is this the "Right to Fair Hearing" Congress intended?   The appeals officer
tried to intimidate Appellant by referring to a Tax Court case in which a $4,000.00
penalty was imposed.   Tax Court has no jurisdiction over the "determination" at
issue.

14) In his response to the  MARTINEZ letter , Appellant  requested a change of date and
venue for his hearing due to medical problems and the fact that he was moving to Las
Vegas.   He also requested the appeals officer produce documented proof that the

Secretary authorized the instant collection action and that the Attorney General or his delegate "directed" that this collection action be commenced as they are both required to do pursuant to Code Section 7401. (Exhibit F)

15) On August 16, 2001 Appellant once again wrote to MARTINEZ trying to get his hearing date set, enclosing a letter from his Texas Senator, KAY BAILEY HUTCHINSON in which the Senator clearly states "The burden of proof for taxpayers in tax court will...be shifted from the taxpayer to the IRS." (Exhibit G)

16) As confirmed by the transcript (Exhibit C) the settlement officers started the CDP hearing by letting Appellant know that they were both *settlement officers*, not appeals officers.

   a) Appellant began by asking, "Is a settlement officer the same thing as an appeals officer" to which they responded "There's a slight difference in that a settlement officer has a collection background." (C-2 line 4-8)

   b) Appellant continues "...my understanding is that this is a Due Process Hearing that I've requested and been granted...and under the Section 6330 it would appear that I have the opportunity to be heard and have notice given to me about the Statutes that govern the issue of the "frivolous penalty"...is that correct?" response "That's correct..." (C-3 line12-18)

   c) Appellant went on to ask the settlement officer "do you have any written verification from the Secretary of the Treasury that the requirements of any applicable laws or administrative procedures have been met as required in Internal Revenue Code Sections 6330(c)(1)?" response "I can provide you the official Certificate of Assessment that is signed for by a delegate of the Secretary...LINDA WEISKOPF". (C-7 line 6-19)(Exhibit H)

   d) Appellant goes on "...how do I know that LINDA WEISKOPF is a delegated, authorized agent of the Secretary of the Treasury? How can I be assured of that?" response "All I can tell you is that the Code provides delegates to the Secretary...Section 7701 defines what a delegate is...And that's any officer... any employee of the Service." (C-9 line 2-3)  Let the Court take judicial notice, that settlement officer, DONNA FISCHER has determined there is no need for the Secretary or for Congress!

e) Appellant goes on to say "...does it meet the requirements of 6330(c)(1)?...I don't believe that this does meet those requirements...because it's not signed by the Secretary, and I have no way of knowing that the delegate, LINDA WEISKOPF is a delegated official of the Treasury Department...would you have a copy of a delegation order that would show that?" response "...I don't have the Code with me, no...you can check that out" (C-9)

f) Appellant goes on to ask "...Do you have verification from anyone else...?" response "No...No. No, I do not" (C-10 line 12, 20, 24)

g) Appellant continues "...in connection with the frivolous penalty proposed or imposed, do you have any supporting documents showing who imposed the penalty and who authorized it?" Response "No. Other than the Certificate of Official Record, I do not... I don't have a copy of the document. I have requested those documents but...I have not received them to date." (C-11 line 2-8, 18-22)

h) Settlement officer FISCHER goes on to say "The questions that you're asking have to do with re-establishing the validity of the assessment. That's not the purpose of the Collection Due Process Hearing...The purpose here is to discuss collection alternatives...6330 gives you the right to examine the proposed collection enforcement action...not to re-establish the validity of the assessment" Doesn't 26 IRC 6330(c)(2) (A) state "In general. The person may raise at the hearing **ANY** relevant issue relating to the unpaid tax...?" (C-13 line 8-11)

i) The settlement officer tried (for 5 pages of transcript) to make Appellants tax return an issue, in addition to wanting Appellant to reveal what his definition of "income" is. None of these questions were appropriate under the §6330 CDP hearing.

j) Appellant goes on to say "...her (SWALL'S) letter says right here, "...You may raise as an issue the validity of the underlying assessment only if you did not receive a statutory Notice of Deficiency or otherwise had the opportunity to dispute the assessment..." "I haven't received anything." If this statement

is true, what happened from the time settlement officer SWALL (Exhibit I) wrote her letter and the time of Appellant's hearing? (C-18 line 16-20)

k)  Settlement officer FISCHER goes on to say "...according to IRC 6702, the return you filed was frivolous." Appellant contends "...6702 in my opinion, is benign. It has no force and effect of law because there's no implementing legislative regulation that establishes it." (C-19 line 6-11) Settlement officer Fischer goes on to say "There are no implementing regulations. That has already been through the courts. There's no implementing...regulations required for IRC 6702...**no regulations are required for IRC 6702**... There's a court decision out and I would have to get the name of that." Appellant "Could you get that for me?" Fischer "Yes. I'm sure that Ms. SWALL could provide that to you...**There's a District Court decision out that says that no implementing regulations are required for IRC 6702**."(C-23,24 & 26 line 4-24, 1-3, 16) Let the Court take notice, no such District Court decisions have been provided to Appellant to date.[5] Settlement officer Fischer goes on "What 6330 says is that the appeals officer will obtain Verification from the Secretary. It does not say that the appeals officer will provide it to the taxpayer." Let the Court take notice what 26 IRC 6330 (c)(1)actually says, in pertinent part, "**Requirement of investigation**. The appeals officer **shall at the hearing obtain verification from the Secretary** that the requirements of any applicable law or administrative procedure have been met ." While 26 IRC 6330(c)(3)(A) states "**Basis for the determination**. The determination by an appeals officer (not settlement) shall take into consideration – (A) the verification **presented** under paragraph (1) ."

---

[5] In <u>California Bankers Assn. V. Schultz</u>, 416 U.S. 21, 26 (1974) the Supreme Court ruled that a statute's "civil and criminal penalties attach only *upon violation of regulations* promulgated by the Secretary; if the *Secretary were to do nothing* the Act itself would impose **no penalties upon anyone**." And 'Since only those who violate these regulations may incur civil or criminal penalties, it is the actual regulation issued by the Secretary and not the broad authorizing language of the statute which is to be tested..." In <u>US vs. Mersky</u>, 361 US 431, 4L ed 2d 423, 80 S Ct, 459, the Court had before it a statute reading "The Secretary may by regulations...". When a **statute calls for an implementing regulation**, the Court stated that "Once promulgated, these regulations, called for by the statute itself, have the <u>force of law</u>, and violations thereof incur criminal prosecution just as if all the details have been incorporated into the congressional language. The result is that <u>neither the statute nor the regulations are complete without the other,</u> and <u>only together do they have any force.</u> In effect, therefore, the <u>construction of one necessarily involve the construction of the other.</u>"

supra. (C-20, line 13-16). To whom is this to be **presented** if not to Appellant?

l) Appellant goes on to say "I don't recall getting a Statutory Notice and Demand for payment of this penalty. Was there a notice sent to me...do you have a file copy?" Fischer replies "Well, no. Your Statutory of balance due is Notice and Demand. Your certified transcript shows it was issued February 18th of 2000...The courts have held that this is all we have to have...is the certified assessment record." (C-32, Line 13-16) Appellant "But a Statutory notice and demand is on a specific form, is it not?...Promulgated by Treasury Decision 1995..." (Exhibit K) FISCHER says "...there are many Notice and Demand letters sent to most taxpayers." (C-40 line 13-16) Let the Court take notice that TD 1995, never revoked, established IRS Form 17A as Statutory Notice & Demand (Exhibit K)

m) Appellant asks "What courts have held?...What courts? Show me a cite. A Supreme Court decision..." Fischer, "We will send that to you". (C-33 line 1-10) Settlement officer Fischer then goes on to become very sarcastic and non-responsive "...the issues you are raising have been raised hundreds of times...The IRC is very clear on what is income and what are filing requirements and...that we have seen these issues raised repeatedly...I have to say that no one prevails. It's futile..."(C-37 line 1-11)

n) Appellant then asks "Can you identify for me the Treasury Regulation which I'm to comply with, according to the Privacy Act, or Code Section that requires me to pay this frivolous penalty? Here's my Internal Revenue Code (Appellant handed IRC to FISCHER who refused to look at it)...what I want the IRS to do is to show me a law that requires me to pay the tax and that makes me liable for the tax" Let the Court take notice, if the IRC is so clear, why doesn't the settlement officer simply identify the code section that makes Appellant liable, settlement officer FISCHER once again becomes non-responsive instead of simply pointing out the Code Section she goes on to say "...(you) read it carefully...And you will see...You read it?...From beginning to end?...Thank you very much for coming in..." (C 44 line 1-4,

46 line 4-25)

o) It is Appellant's claim that there is no Section in the IRC that makes Appellant "liable" for income taxes as for example, Code Sections 4401, 5005 and 5703" do with respect to "wagering, alcohol and tobacco taxes". Therefore, if there is no Section of the IRC that makes Appellant "liable" for income taxes, Appellant couldn't be "liable" for the penalties at issue, since they are based on his being "liable" for the underlying tax.

p) Appellant would like the court to take judicial notice that 26 USC 6751(b)(1) states, "No penalty under this title shall be assessed unless the initial determination of such assessment is *personally approved (in writing) by the immediate supervisor of the individual making such determination...*" (Emphasis added). Appellant requested the settlement officer simply display a document with the signatures of the person or persons who imposed the penalty at issue, as is Appellant's right under a 6330 CDP hearing.

q) It is also Appellant's claim that BARBARA J. STRUDEL, if in fact there is such a person, is not a delegate of the Secretary (as referred to in paragraph 12(d) herein) delegating her with any authority to send Appellant a notice, notifying Appellant of his right to a Section 6330 CDP hearing. (Exhibit J )

r) Since said notice was not sent by the Secretary, or a delegate of the Secretary, the United States is barred by the specific language of 6330(a)(1) from seeking to levy Appellant's property.

s) Appellant would like the Court to take judicial notice that 26 USC 6331(a) provides that the Secretary must issue a *statutory* Notice and Demand for payment to the taxpayer (not a 'Balance Due" notice) and the taxpayer must "refuse to pay" within 10 days after receipt of such document, before a levy can be made.

t) Appellant would also like the Court to take notice that nowhere on the IRS 4340 transcript, (Exhibit H), the only document given to Appellant at the CDP hearing, does it state that the statutory "Notice and Demand" for payment was sent.

u) An appeals officer, not present at Appellant's CDP, issued a lawless determination dated February 21, 2002. (Exhibit A) The appeals officer had no legal basis for making such a determination as he did not disprove any of petitioner's claims or provide any documentation that supported the Government's position.

17) In this 'determination' letter (Exhibit A) the settlement officer made false and fraudulent statements such as:

a) "The Secretary has provided sufficient verification that all legal and procedural requirements have been met."(A-3)  Aside from an unsigned, computer generated transcript, the settlement/appeals officer, have no way of knowing , or proving, that all the legal and procedural requirements have been met.

b) "The taxpayer's actions meet the conditions for assessment of the penalty...The assessment is valid." How can the officer in question know that the assessment is valid, as they could not identify who made the assessment and, most importantly if that employee had the authority to do so.

c) As stated above, Appellant never received any notice and demand for payment in connection with the civil penalty, nor do any of the computer generated transcripts, (i.e. IRS 4340) show that a *statutory* notice and demand for payment were ever sent.

d) "At the hearing the taxpayer admitted...that he had in fact received the monies or compensation..." That is a false claim. After settlement officer FISCHER continually pressured Appellant to answer an income question that was not at issue in this hearing (A 15-18), Appellant said "Did I receive money? Yeah, but I didn't receive "income"."

e) "At the hearing the taxpayer raised several frivolous questions and requested copies of certain court case decisions that were cited by Appeals. The Settlement Officer has supplied this information to the taxpayer". Another false claim. Settlement officer stated at the CDP hearing there was a District Court case that revealed there was no need for an implementing legislative regulation for 26 USC § 6702. She never provided any District Court case. urt

f) "The taxpayer raised no non-frivolous issues." That statement is an unsupported opinion. All of the issues raised at CDP hearing, prior letters to Appeals officers and outline issues intended to be raised by Appellant were within the provisions of 26 USC 6330 were addressed by the settlement officer(s).

g) Lastly, "He (Appellant) was given an opportunity at the hearing to pay his taxes, however, chose to argue that he would pay only if Appeals could convince him that the assessment was valid. This statement is also false. Appellant's taxes were not at issue in this hearing, and all Appellant requested was for the Settlement officers to show him in the Code book, the statute that made him liable for the underlying taxes, which would have triggered the "frivolous penalty" pursuant to 26 USC § 6702.

15) In view of all of the above, Appellant makes the following factual allegations and challenges the Government to deny them, and/or offer any contrary evidence.

a) At the CDP hearing the appeals officer violated the law by not "presenting" petitioner with the "verification from the Secretary" as required by Code Sections 6330(c)(1) and 6330(c)(3)(A).

b) No statutory Notice and Demand for payment was ever sent to Appellant in accordance with the provisions and requirements of Code Sections 6303, 6321, and 6331, and as promulgated by Treasury Decision 1995.

c) No statute in the Internal Revenue Code establishes the "existence…of the underlying tax liability" as referred to in 6330(c)(2)(B), and the United States will not be able to identify for this Court any statute that refers to any such tax liability as for example Code sections, 4401(c), 5005(a), and 5703(a) do with respect to Wagering, Distilled spirits, and Tobacco taxes.

d) No document exists that supports the imposition of the frivolous penalty such as the Form OSC 330.

e) No settlement or appeals officers has a Delegation of Authority from the Secretary of the Treasury that authorizes any Examination or Collection employee to impose the "frivolous penalty" at issue and collect it by distraint.

    f) No Treasury Department regulation exists that authorizes Appellee employees to impose the "frivolous penalty" at issue or require Appellant to pay such a "frivolous penalty"

Based on all of the above, it is clear that the CDP hearing of October 18, 2001 was not held in accordance with the law and that the "determination" at issue is a fraud and a mockery of IRC Section 6330. It is also clear that the Appellee's employees who issued the "determination" had no basis in law or fact to issue such a "determination." In doing so, they have injured Appellant in that they have compelled him to expand a good deal of time, money and energy in having to further litigate their fraudulent "determination" in order to prevent the illegal seizure of Appellant's property pursuant to Code Section 6331. Therefore, based on all of the above, Appellant requests that this Honorable Court:

    1) Declare invalid the IRS "determination" of February 21, 2002, since the CDP hearing was not held in accordance with the provisions of 26 USC 6330.

    2) Order the government to reimburse Appellant for all of costs in bringing this action.

    3) Award Appellant such other punitive damages as equity relief dictates based on the needless time, effort and money Appellee's lawless actions compelled Appellant to expend.

**Pursuant to 28 U.S.C. 1746, I certify under penalty of perjury that the foregoing is true and correct.**

    **Executed on March 21, 2002.**

                    Respectfully submitted

                    _____

                    JAN A. LINDSEY
                    1627 Clarksville Court
                    Henderson, NV  89052
                    702/263-6332

*Copy*

**Internal Revenue Service**
Appeals Office
4750 West Oakey Blvd.
Las Vegas, NV 89102

**Department of the Treasury**
Small Business/Self-Employed

**Person to Contact:**
  Marlene R. Swall
  Employee ID Number:
  Tel: (702) 455-1111
  Fax: (702) 455-1175
**Refer Reply to:**
  AP:SB:LV:RS
**SSN/EIN Number:**
  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
**Tax Type/Form Number:**
  Civil Penalty
**Tax Period(s) Ended:**
  12/1999
**In Re:**
  Due Process Appeal
  (District Court)

Date: February 21, 2002

Jan A Lindsey
1627 Clarksville Ct
Henderson, NV 89052

**Certified Mail** – 7001 1140 0000 1117 3771

## NOTICE OF DETERMINATION
## CONCERNING COLLECTION ACTION(S) UNDER SECTION 6320 and/or 6330

Dear Mr. Jan A Lindsey:

We have reviewed the proposed collection action for the period(s) shown above. This letter is your legal Notice of Determination, as required by law. A summary of our determination is stated below and the enclosed statement shows, in detail, the matters we considered at your Appeals hearing and our conclusions.

If you want to dispute this determination in court, you have 30 days from the date of this letter to file a complaint in the appropriate United States District Court for a redetermination.

The time limit for filing your complaint (30 days) is fixed by law. The courts cannot consider your appeal if you file late. If the court determines that you made your complaint to the wrong court, you will have 30 days after such determination to file with the correct court.

If you do not file a complaint with the court within 30 days from the date of this letter, your case will be returned to the originating IRS office for action consistent with the determination summarized below and described on the attached pages(s).

*EXHIBIT #A-1*

If you have any questions, please contact the person whose name and telephone number are shown above.

**Summary of Determination**

Action by the government to levy your property, or rights to property, would be appropriate.

Sincerely,

Wiley Davis
Team Manager, SBSE Team 3
DEN

EXHIBIT A-2

## Attachment - 3194

| Type of Tax | Tax Period | Date of Letter 1058 | Date CDP Request Received |
|---|---|---|---|
| Civil Penalty, IRC 6702 | 12/31/1999 | 12/14/00 | 01/09/01 |

### What is the Issue?

The taxpayer requested a hearing under the provisions of IRC §6330 to contest the intent to levy notice, Letter 1058. The tax period and type of tax is set out above.

### Verification of Legal and Procedural Requirements

The Secretary has provided sufficient verification that all legal and procedural requirements have been met.

The liability at issue is a $500.00 penalty assessed on September 18, 2000 under IRC §6702, Frivolous Income Tax Return. A review of the certified transcripts on this account show that notice and demand was issued by regular mail to the taxpayer's last known address as required under IRC §6321. The notices required under IRC §6331(d) and IRC §6330 were combined in Letter 1058 dated December 14, 2000, which was mailed certified to the taxpayer's last known address. The Letter 1058 was signed for and received at an address in Texas; the taxpayer later moved to Nevada. The taxpayer responded with Form 12153, Request for a Collection Due Process Hearing, which was postmarked January 8, 2001. The taxpayer attached several pages of frivolous arguments to the Form 12153. The taxpayer's appeal was timely. The taxpayer is entitled to judicial review.

This is a levy issue only. No Notice of Federal Tax Lien has been filed. The appeal is to determine the civil penalty assessed for 1999. Per the taxpayer's written request, Form 4340, certified transcript of the assessment was requested and provided to the taxpayer at the hearing. The Letter 1058 only addressed the civil penalty for the period ending December 31, 1999, not the Form 1040 taxes for 1999. In an attachment to the Form 12153, the taxpayer requested information regarding his purported 1999 refund; this issue is not part of the collection due process request and was not addressed at the hearing.

The taxpayer appeared in person for the collection due process hearing on October 18, 2001 at the Las Vegas Appeals Office. Also in attendance were a witness of the taxpayer, Mr. Bruce Benson, Settlement Officer Renee Swall and Settlement Officer Donna Fisher. The hearing was audio recorded by both the taxpayer and Settlement Officer Renee Swall. There was no court reporter present.

TAXPAYER(S): Jan A. Lindsey
Renee Swall, Settlement Officer

EXHIBIT A-3

Settlement Officer Renee Swall has had no prior involvement with respect to these tax liabilities.

**Issues Raised by the Taxpayer**

Form 4340, Certificate of Official Record, was provided to the taxpayer per his written request attached to Form 12153. The taxpayer marked this as Exhibit A.

The 1999 return and attachments were requested by the Settlement Officer from the Austin Service Center on September 27, 2001 and had not been received at the time of the hearing. However, a review of the income documents on file with the Service indicates that the taxpayer had taxable income in various forms, including IRA distributions and non-employee compensation. The transcripts indicate that the taxpayer filed a zero income, zero tax due return for the 1999 year and requested a refund of his withheld tax. At the hearing the taxpayer admitted to filing a zero return and that he had in fact received the monies or compensation that the Service's records indicate for 1999. The taxpayer does not believe the tax laws apply to him.

The Austin Service Center mailed him a letter explaining the penalty imposed by IRC 6702, and allowing him thirty days in which to file corrected returns, stating that if he did so, the civil penalty for filing a frivolous return would not be assessed.

IRC §6702 provides:

    (a) CIVIL PENALTY – if –
    (1) any individual files what purports to be a return of the tax imposed by subtitle A
        but which –
        (A) does not contain information on which the substantial correctness of the self-
            assessment may be judged, or
        (B) contains information that on its face indicates that the self-assessment is
            substantially incorrect; and
    (2) the conduct referred to in paragraph (1) is due to -
        (A) a position which is frivolous, or
        (B) a desire (which appears on the purported return) to delay or impede the
            administration of Federal income tax laws,
then such individuals shall pay a penalty of $500.

The taxpayer's actions meet the conditions for assessment of the penalty. The penalty was properly applied. The assessment is valid.

The taxpayer asked for documents pertaining to the assessment in addition to the Form 4340 transcripts. The taxpayer was directed to make this request for documents under the Freedom of Information Act through the Disclosure Office located in Phoenix, Arizona. At the hearing the taxpayer raised several frivolous questions and requested copies of certain court case decisions that were cited by Appeals. The Settlement Officer has supplied this information to the taxpayer as well as a copy of the audio recording of the hearing, which the taxpayer requested. The

TAXPAYER(S): Jan A. Lindsey
Renee Swall, Settlement Officer

EXHIBIT A-4

taxpayer was also given copies of recent court cases, <u>Terry Pierson v. Commissioner</u>, and <u>Regina Davis v. Commissioner</u>, wherein sanctions were imposed for frivolous arguments. The taxpayer requested a copy of the Form 330, Penalty Screening Approval Form. A request was made for this document; however, it was not part of the penalty file and therefore was not provided to the taxpayer.

The taxpayer raised no non-frivolous issues.

### Balancing the Need for Efficient Collection with Taxpayer Concerns

The requirements of all applicable laws and administrative procedures have been met.

The taxpayer received his required notices and he was given the opportunity to correct his tax return. He was given an opportunity at the hearing to pay his taxes, however, chose to argue that he would pay only if Appeals could convince him that the assessment was valid.

Given the taxpayer's continued non-compliance, I believe the government should be allowed to proceed with its proposed enforcement action, its intent to levy. Lacking the taxpayer's cooperation, the proposed collection action balances the need for efficient collection with the taxpayer's concern that any collection action be no more intrusive than necessary.

TAXPAYER(S):  Jan A. Lindsey
Renee Swall, Settlement Officer

EXHIBIT A-5

*Lindsay Copy*

# Request for a Collection Due Process Hearing

Use this form to request a hearing with the IRS Office of Appeals only when you receive a **Notice of Federal Tax Lien Filing & Your Right To A Hearing Under IRC 6320**, a **Final Notice - Notice Of Intent to Levy & Your Notice Of a Right To A Hearing**, or a **Notice of Jeopardy Levy and Right of Appeal**. Complete this form and send it to the address shown on your lien or levy notice for expeditious handling. Include a copy of your lien or levy notice(s) to ensure proper handling of your request.

(Print) Taxpayer Name(s): __IAN A. + MARSHA M. LINDSEY__

(Print) Address: —New— __1627 CLARKSVILLE CT. HENDERSON, NV 89052__

Daytime Telephone Number: __702/263-6332__   Type of Tax/Tax Form Number(s): __FIT / 1040__

Taxable Period(s): __1999__

Social Security Number/Employer Identification Number(s): __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__

Check the IRS action(s) that you do not agree with. Provide specific reasons why you don't agree. If you believe that your spouse or former spouse should be responsible for all or a portion of the tax liability from your tax return, check here [   ] and attach Form 8857, Request for Innocent Spouse Relief, to this request.

—— **Filed Notice of Federal Tax Lien  (Explain why you don't agree. Use extra sheets if necessary.)**

✓ **Notice of Levy/Seizure (Explain why you don't agree. Use extra sheets if necessary.)**

(1) PLEASE SEE EXPLANATION ON ATTACHED.

(2) I MOVED TO MY CURRENT ADDRESS (ABOVE) ON 12/18/00. PLEASE CHANGE ON ALL IRS RECORDS.

(3) I WILL BE ALONE @ HEARING AND REQUEST I BE ALLOWED TO REPRESENT MY WIFE (JOINT RETURN)

I/we understand that the statutory period of limitations for collection is suspended during the Collection Due Process Hearing and any subsequent judicial review.

Taxpayer's or Authorized Representative's Signature and Date: __Ian Lindsay   01/08/01__

Taxpayer's or Authorized Representative's Signature and Date: _____

IRS Use Only:

IRS Employee (Print) _____   IRS Received Date _____

Employee Telephone Number _____

Form **12153** (01-1999)   Catalog Number 26685D   **(Over)**   Department of the Treasury – Internal Revenue Service

*EXHIBIT B-1*

*JAN A. LINDSE '15*

## REQUEST FOR DUE PROCESS HEARING "FRIVOLOUS" PENALTY

*The Appeals Officer is Requested to:*

Please have at the hearing:

1) The name or names of the IRS employees who imposed the "frivolous" penalty along with their Federal ID number.

2) The delegation of authority from the Secretary authorizing such persons to impose a "frivolous" penalty.

3) The official job description(s) of those IRS employees who imposed the "frivolous" penalty.

4) Since Code Sections 6001 and 6011 (Code Sections specifically mentioned in the Privacy Act Notice in the 1040 booklet) advise the public that they need only "comply with regulations," I am requesting that you also have at the hearing the Treasury regulation that allows IRS employees to impose the "frivolous" penalty, and the regulation that requires me to pay it.

5) Since I am challenging the "underlying liability" of the tax at issue as referred to in Code Section 6330(c)(2)(B), I am requesting that the hearing officer have at the hearing the specific Code section that makes me "liable" for the income tax at issue.

Please note that I have attached to this request, page 73 of Senator Roth's book "The Power to Destroy." It states: "…recent internal investigations by the Internal Revenue Service itself admit that far too many of the countless assessments, seizures, levies, and fines that the IRS executes each year are inappropriate and in open violation of the law." Senator Roth is Chairman of the Senate Finance Committee that investigated the IRS and itself found wide scale IRS abuse. This resulted in Congress establishing, for the protection of the public, the "Right to fair hearing" (as provided for in 6320(b)(1)) in order to prevent the illegal levies and "violations of law" referred to in Senator Roth's book. Thus if any IRS employee attempts to deny me the "Due Process Hearing" *guaranteed to me by law*, I will seek damages pursuant to Code Section 7433 and file charges against the offending IRS employee pursuant to paragraph 6, Section 1203 of the IRS Restructuring Act of 1998.

In addition, I have attached several pages from the Supreme Court decision "*Federal Crop Insurance v. Merrill*, 332 U.S. 380. Please note that the Supreme Court stated that "Anyone entering into an arrangement with the government *takes the risk of* having accurately ascertained that he who purports to act for the government stays within the bounds of his authority." In addition, the Solicitor General of the United States argued to the Court that "Those dealing with an officer or agent of the United States *must be held to have had notice of the limitations* upon his authority," and that they are "duty bound to read the Regulations."

Therefore, I am not prepared to "take that risk" that the person or persons who imposed the penalty at issue may <u>not have been authorized to do so</u>. Also, the only way I can have "notice" of the "limitations" of their "authority" is to see their job descriptions and delegations of authority to impose such a penalty – so I want to see those documents at the Due Process Hearing as well as the implementing regulations as referred to by the Solicitor General.

Therefore I will need to see all of the above documents at the IRC 6320 "Due Process Hearing" before I am persuaded that I am legally obligated to pay the $500, frivolous penalty at issue.

*ALSO, be advised that I intend to tape record the hearing for record purposes!*

*Dave Fury    01/08/01*

B-2

*IRS*
*FOR INFORMATION.*

Date:
DEC 14, 2000

Taxpayer Identifying Number:
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     V 04

Contact Telephone Number:

TOLL FREE:   1-800-829-7650
MON-FRI:     8:00AM-8:00PM

JAN A LINDSEY
47 W MISTY MORNING TRCE
THE WOODLANDS   TX   77381-3859478

Department of the Treasury
Internal Revenue Service
P.O. BOX 149047
AUSTIN, TX 78714

## Final Notice - Notice of Intent to Levy and Notice of Your Right to a Hearing
### Please Respond Immediately

You have not paid your federal tax. We previously asked you to pay but we still haven't received full payment. This letter is your notice of our intent to levy under Internal Revenue Code Section (IRC) 6331 and your notice of a right to receive Appeals consideration under IRC 6330. PLEASE CALL US IMMEDIATELY at one of the telephone numbers shown above if you recently made a payment or can't pay the amount you owe.

We may file a Notice of Federal Tax Lien at any time to protect the government's interest. A lien is public notice to your creditors that the government has a right to your interests in your current assets and assets you acquire after we file a lien.

If you don't pay this amount, make alternative arrangements to pay, or request Appeals consideration within 30 days from the date of this letter, we may take your property or rights to property such as real estate, automobiles, business assets, bank accounts, wages, commissions, and other income to collect the amount you owe. See the enclosed Publication 594, Understanding the Collection Process, for additional information about this and see Publication 1660 which explains your right to a hearing. The enclosed Form 12153 is used to request a hearing.

To prevent enforced collection actions, please send us full payment today for the amount you owe shown on the back of this letter. Make your check or money order payable to the United States Treasury. Write your social security number or employer identification number and the tax year on your payment. Send your payment in the enclosed envelope with a copy of this letter.

*Barbara J. Strudel*

Enclosures:
Copy of letter
Form 12153
Publication 594
Publication 1660
Envelope

Chief, Automated Collection Branch

Letter 1058 (Rev. 01-1999)(LT-11)

B-3

Case 2:02-cv-00401-KJD-RJJ   Document 1-1373926   Filed 03/21/02   Page 21 of 98

SAVAGE ROTH'S BOOK
(EXCERPT)

managers whose first priority is not necessarily to do what's right, but rather what's expedient and beneficial to their own success. Within the quota-driven Collections Division, a resourceful revenue officer had seized $50,000 belonging to TSA, and the IRS was not about to give the money back.

Compounding its duplicity, the Internal Revenue Service never disclosed the Justice Department's letter to Savage or his attorneys. In fact, the opinion surfaced only during the course of our investigation, long after the agency determined to drag the small businessman through a prolonged and costly battle, perhaps anticipating that with limited resources pitted against he inexhaustible legal apparatus of the federal government, Savage would either fold or be forced out of business.

Beyond the money seized by the revenue officer, Tom Savage and his wife spent another $50,000 in legal fees. Unable to sleep, and with their energy concentrated on finding a semblance of justice from their government, they lost $600,000 in work that they had to decline due to lack of time and resources. Faced with a win-at-all-costs attitude on the part of the agency, Savage—without the knowledge that the Justice Department attorneys had advised the IRS that what it had done was illegal—made the decision to settle, allowing the Service to keep their money after a federal judge explained that to continue the battle in court would run into hundreds of thousands of dollars in legal costs. Tom and Frances Savage simply could not afford to continue. "As much as it offended my wife and me," Savage testified, "we chose to settle the case. We wanted to pursue it to the end, but to do so would have destroyed us."

## Taxpayers' Rights at Risk

It would be comforting to believe that Tom Savage's nightmare, as well as the others I've documented so far, constitute

rare exceptions—aberrant behavior by a few self-serving agency employees—but recent internal investigations by the Internal Revenue Service itself admit that far too many of the countless assessments, seizures, levies, and liens that the IRS executes each year are inappropriate and in open violation of the law. Mistakes and abuses within the system are not rare. The over-emphasis on statistics encourages—and some revenue officers even say forces—employees to do whatever is necessary to keep their numbers up. Citing our September hearings as impetus, Commissioner Rossotti initiated a series of internal audits in the final months of 1997. What he and his agency discovered was that the IRS has created an environment driven by statistical accomplishments that places taxpayer rights at risk.

According to the internal review:

- The IRS' corporate performance measurement system, through a statistical ranking of the districts, encouraged the collection field function to emphasize enforcement results without corresponding emphasis on case quality, adherence to law, policy, and procedure, or taxpayer rights.

- References to enforcement statistics were contained in 130 of 340 group manager evaluations. The sampled data suggest that more than a third of all group managers throughout America are being judged by the number of cases their agents and officers close, as well as the amount of money that is collected through assessments, levies, liens, and seizures.

- Approximately one fourth of the revenue officers and group managers stated that they feel pressure to achieve enforcement goals and take enforcement actions, even as national and regional oversight of the use of enforcement statistics and goals is limited.

B-4

332 US
332, 380

SUPREME COURT OF THE UNITED STATES          Oct. Term,

Government only by civil proceed-
ings and liability for a tax,
he established it beyond repeal.
Ullner v. United States
(CCA 4th Sct) 146 P2d 609, 271.

The payments are imposed in
part for revenue purposes although
especially as a means of inducing
action sources to control their sales
of cotton in interstate and foreign
commerce in accordance with the
economic policies of the Govern-
ment. During its consideration of
the Agricultural Adjustment Act,
Congress declined to adopt a pro-
posal to treat such sales as in vio-
lation of law," and "adopted instead
the policy recognizing such sales as
lawful sales conditioned upon pay-
ment to the Government of the
.......

charges here being considered.
Financial burdens which may be
imposed without the payment of
interest are much less burdensome
than those that are not post-ponable
or that are subject to the accrual
of interest during their postpone-
ment. The omission of the usual
interest charge on postponed mar-
keting penalties therefore decreases
the force of the Act as a deterring
factor and runs counter to the spe-
cific purpose of the Act.

For these reasons, the judgment
of the Circuit Court of Appeals, af-
firming that of the District Court
allowing interest from the date of
default, should have been affirmed.

Mr. Justice Rutledge joins in this
dissent.

[See annotation references, 1.]

2. The rules of law whereby private in-
surance companies are rendered liable for
the acts of their agents are not legally ap-
plicable to the Federal Crop Insurance
Corporation.
[See annotation references, 1.]

3. The government, operating on its
governmental mandate, executive
agencies, through corporate forms es-
pecially created for defined ends.
[See annotation references, 1 and 2.]

2. Generally.

FEDERAL CROP INSURANCE CORPORATION
v.
A. A. MERRILL and N. D. Merrill, Co-partners, Doing Business
under the Firm Name and Style of Merrill Bros.
(332 US 380-388.)

SUMMARY

A farmer procured crop insurance from the Federal Crop Insurance Cor-
poration after disclosing the facts to and receiving the assurance of local
agents of the corporation that the crop was insurable. Neither he nor the
local agents knew that under a duly promulgated regulation of the Insur-
ance Corporation the crop was not insurable. It was held by five members
of the court in an opinion by FRANKFURTER, J., in which BURTON, MURPHY,
REED, JJ., and VINSON, Ch. J., joined, that the Crop Insurance Corporation
was not estopped to deny liability. BLACK, J., and RUTLEDGE, J., dissented
without opinion. JACKSON, J., in an opinion in which DOUGLAS, J., joined,
expressed the view that the Federal Crop Insurance Corporation should be
held "to the same fundamental principle of fair dealing that have been
found essential in progressive states to prevent insurance from being an
investment in disappointment."

92 L ed 10

United States, § 69 — contracts — liability.

1. The fact that the government has
taken over a business as it is engaging
in competition with private ventures does
not subject the government to the rules
of law governing private individuals, as to
liability for acts of agents.

[See annotation reference, 1.]

2. — liability for acts of agents.
[Four Jus-
tices dissented.]

HEADNOTES

Classified to U.S. Supreme Court Digest, Annotated

5. The Federal Crop Insurance Corpora-
tion is bound by an insurance given to a
farmer by its local agents that his crop
was insurable, where a valid regulation
published in the Federal Register had
made the crop not known to the farmer or to the local
agents, precluded coverage.
[Four Justices dissented.]

REFERENCES
State Agricultural Adjustment Acts,
see annotation in 102 ALR 937 and
114 ALR 136.

1947.

FEDERAL CROP INS. CORP. v. MERRILL.

[No. 46.]

Argued October 16, 1947. Decided November 10, 1947.

ON WRIT of Certiorari to the Supreme Court of the State of Idaho to
review a judgment affirming a judgment of the Idaho District Court, Ninth
District, Bonneville County, in favor of plaintiffs in an action on a Federal
crop loan insurance contract. Reversed and remanded.

See same case below, 67 Idaho 196, 174 P2d 834.

Harry I. Rand, of Washington, D.C.,
argued the cause for petitioner; with him
on the brief was General Philbrick.

These regulations explicitly circum-
scribed the powers and authority of the
petitioner's agents. By providing that
knowledge of Crop Insurance they could not
be applied to petitioner and that they
had no authority to waive or change
the terms of the contract.

ANNOTATION
Federal crop insurance, an-
notation in 176 ALR 1081.

SUPREME COURT OF THE UNITED STATES

Oct. Term,

FEDERAL CROP INS. CORP. v. MERRILL

1947.

(3)

B-6

OVER →

**COLLECTION DUE PROECESS HEARING FOR**

**JAN LINDSEY**

SWALL:        We are here today for a Collection Due

Process Hearing with Mr. Jan Lindsey and we will – we have a

witness present as well and we will enter that on the record

in just a moment.  Today's date is October 18th it's

approximately 2:45.  My name is Renee Swall.  My employee ID

number is 88-55073.  I'm a settlement officer with the Las

Vegas Office of Appeals.  With me today is --

FISCHER:        Donna Fischer.

SWALL:        -- is also a settlement officer.  This

meeting is being held at the Las Vegas appeals office located

at 4750 West Oakey Boulevard in Las Vegas.  This meeting is

being recorded at the request of the taxpayer.  The taxpayer

is present.  There is not a court reporter here today.  This

meeting is a Collection Due Process Hearing as I said under

IRC Section 6330.  We are now going to have the taxpayer and

the taxpayer's witness identify themselves for the record.

LINDSEY:        Very good.  My name is Jan Lindsey.

I'm the taxpayer.  I reside at 1627 Clarksville Court in

Henderson, Nevada, zip code's 8-9-0-5-2.  My social security

number is 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 and I have as a witness today --

BENSON:        Bruce Benson.

EXHIBIT C-1

1

1      SWALL:          Okay.  Very good.

2      LINDSEY:        Can I ask a question at this point?

3      SWALL:          Sure, go ahead.

4      LINDSEY:        Is a settlement officer the same thing

5  as an appeals officer, within the IRS?

6      SWALL:          There's a slight difference in that a

7  settlement officer has a collection background.

8      LINDSEY:        Okay.

9      SWALL:          Kind of like a --

10     LINDSEY:        So appeals officer would not have a

11 collection matter.

12     SWALL:          Not necessarily.  They have more of an

13 exam background.

14     LINDSEY:        So you have – you have experience and

15 tenure years of service?

16     SWALL:          I do.

17     LINDSEY:        Do you?  How many years do you have?

18     SWALL:          Let's see, I've been with the IRS for

19 approximately 18 years.

20     LINDSEY:        Well, I've been paying taxes a lot

21 longer than that.

22     SWALL:          So have I.  Okay, before I proceed

23 today, I must advise you that this is an administrative

24 appeal.  Administrative appeal procedures do not extend to

C-2

2

1   issues involving the failure or refusal to comply with the tax

2   laws because of moral, religious, political, Constitutional,

3   conscientious or similar grounds.

4                   It is the roles of the appeals office

5   to be independent of the compliance division.  I am here to

6   analyze and consider the facts that you present and be an

7   impartial reviewer.  We strive to resolve your matters in the

8   promptest manner that we can.  Do you have any questions, at

9   this time, about the actual appeals process and then we'll get

10  into the issues of your request for hearing?

11          LINDSEY:        Well, my understanding is that this is

12  a Due Process Hearing that I've requested and been granted --

13          SWALL:          Right.

14          LINDSEY:        -- and under the Section 6330 it would

15  appear that I have the opportunity to be heard and have notice

16  given to me about the Statutes that govern the issue of the

17  Frivolous Penalty that I'm here about today, is that correct?

18          SWALL:          That's correct and - and we'll get into

19  that --

20          LINDSEY:        And I will have the opportunity to ask

21  questions to?

22          SWALL:          You will.  You will have an opportunity

23  to ask questions.

24          LINDSEY:        Okay, very good.

C-3

3

SWALL:          Okay.  So, we are here today as a result of Mr. Lindsey's request, the filing of a Form 12153. The form is dated January 8th of 2001 and it was postmarked as well, January 8th of 2001.  The automated collection branch out of Austin, Texas issued the letter 1058 – Final Notice Intent to Levy and Your Right to a Hearing.  That letter was dated December 14th of 2000, so we do have a timely request made for a Collection Due Process Hearing, which means under a timely request you have a right to petition the Tax Court if you so desire, after the outcome of our hearing.

FISCHER:        The District Court.

SWALL:          I'm sorry, District Court.  It's not the Tax Court, District Court.

LINDSEY:        Why not the tax court?

SWALL:          Because the particular type of tax liability that you're – that is in discussion today is petitioned with the District Court.

LINDSEY:        Okay.  So the Tax Court will have no jurisdiction in this issue, this matter?

SWALL:          No.  It does not.  No.

LINDSEY:        Okay.  All right.

SWALL:          The period that is the subject of this hearing today and that was indicated on the letter 1058, just mentioned, is a civil penalty assessed under the Internal

C-4

4

Revenue Code 6702.  It's a frivolous penalty of $500 issued

for the tax period ending December 31st of 1999 and in reading

from your form 12153 the issues that were raised under 6330 -

there are three items.  Number One - please see explanation on

the attached form.  Number Two - I have moved to a current

address of - listed above, which is the Clarksville address

already given and the taxpayer has requested that the IRS

change its records to reveal that address and the third item

is that I will be - I will be alone at the hearing and request

that I be allowed to represent my wife, as well, as this was a

joint return.

What I need to specify is that what

we're here to discuss today is only the issue of the letter

1058, which was dealing only with the civil penalty, the $500

civil penalty.  That's the only matter that's in front of us

today.

FISCHER:   Which was assessed only against you,

and so your wife is not a party to this hearing.

LINDSEY:   Oh, it could be assessed against me

even though the return I submitted was joint?

FISCHER:   Yes, it may be.

BENSON:   Did you get a copy of that letter?

LINDSEY:   Yeah.  Yeah.  I didn't know if it was a

form.  Is it form or what is it, a 1058?

C-5

1    SWALL:          It's a form 1058.  It's a letter 1058.

2    LINDSEY:        Okay, and what's the date on it?

3    SWALL:          The date is December 14th of 2000.

4    LINDSEY:        Yes, I remember getting a copy of that

5   and I think it was only addressed to me.

6    SWALL:          Yes, that's true.

7    LINDSEY:        Well, I might point out that subsequent

8   letters, I think, were addressed to both myself and my wife

9   regarding this.

10   SWALL:          Regarding the penalty?

11   LINDSEY:        Do you have any other - any other

12  follow-up letters after that or the previous letters?

13   SWALL:          You know, I get - I'm not aware of any,

14  no, Sir.

15   LINDSEY:        Okay.

16   FISCHER:        Did you submit a form - do you know if

17  your wife submitted a form 12153?

18   LINDSEY:        No.  I only submitted that.

19   FISCHER:        Okay.

20   LINDSEY:        Yeah.

21   SWALL:          Well, under the issues as you have

22  stated here - I don't - I guess I am - open it up to you for

23  any questions you might have.

C-6

1    LINDSEY:        Okay.  Good.  I have seven questions,

2    basically, or seven issues that I'd like to ask questions

3    about.

4        SWALL:         Okay.

5        LINDSEY:        And receive some answers.  The first

6    one is do you have any written Verification from the Secretary

7    of the Treasury that the requirements of any applicable laws

8    or administrative procedures have been met as required in

9    Internal Revenue code Sections 6330 C (1).

10       SWALL:         Okay.  Well, what I can provide you is

11   the - um - and I believe you made a request for these as an

12   attachment to your request, is the official Certificate of

13   Assessment that is signed for by a delegate of the Secretary

14   that lays out the assessment of the civil penalty that's in

15   question, and that is your copy.

16       

17       LINDSEY:        Who is the delegated authorized person?

18       SWALL:         I believe, on that particular

19   attachment, it is Linda Weiskopf, the Director of the Ogden

20   Service Center Submission Processing Center.

21       LINDSEY:        Okay.  Let the record show that Ms.

22   Swall provided me a document dated October 1, 2001 entitled

23   **Certificate of Official Record,** and it is signed by Linda

24   Weiskopf, W-E-I-S-K-O-P-F, Director, Ogden Submission

25   Processing Center, Ogden Fraud Detention Center - Fraud

C-7

7

1   Detention – Detection Center, Okay.  Why would this department

2   have anything to do with our issues here or my --

3   SWALL:          I can only guess at that and I -

4   LINDSEY:        -- hearing?

5   SWALL:          -- would say most likely, Mr. Lindsey,

6   it's because that this particular penalty was assessed as a

7   frivolous penalty, so they might be the unit that handles

8   that.

9   LINDSEY:        The fraud unit?

10   SWALL:          I am not sure of that.  I'm just

11   guessing at that.

12   LINDSEY:        Okay.  What this appears to be is a

13   transcript and what the Statute, I believe, indicates that

14   should be presented and I think it's in 6330 is a document or

15   record signed by the Secretary or his delegate.

16                   Now, how do I know that Linda Weiskopf

17   is a delegated, authorized agent of the Secretary of the

18   Treasury?  How can I be assured of that?

19   SWALL:          All I can tell you is that --

20   LINDSEY:        I've had these - I've had these

21   transcripts, you know --  before.

22   SWALL:          All I can tell you is that the Code

23   provides - um - delegates to the Secretary.  It's - it's Code

24   Section 7701 defines what a dela -- delegate is.

C -8

8

1  LINDSEY:    Uh - huh. (Affirmative)

2  SWALL:    And that's any officer - um - any

3 employee of the Service.  I can't quote it verbatim for you,

4 but that sets out what a delegate is and this Certificate of

5 Official Record meets our requirements to provide to you.

6  LINDSEY:    But does it meet the requirements of

7 6330 C (1)?

8  SWALL:    Yes, it does.

9  LINDSEY:    It does?

10  SWALL:    Uh - huh. (Affirmative)

11  LINDSEY:    Okay.  I don't believe it does so I

12 want to put that on the record.  I don't believe that this

13 does meet those requirements.

14  SWALL:    Okay.

15  LINDSEY:    Because it's not signed by the

16 Secretary, and I have no way of knowing that the delegate,

17 Linda Weiskopf is a delegated official of the Treasury

18 Department.

19  SWALL:    That's certainly your right.

20  LINDSEY:    Do you have - would you have a copy of

21 a delegation order that would show that?

22  SWALL:    I didn't.  I don't have the Code with

23 me, no, but it's 7701, I believe.  You can - you can check

24 that out.

C-9

1      LINDSEY:      This document, Certificate of Official

2  Record will be entered on my – for my record purposes as

3  Exhibit A then.  **(See Exhibit A attached as Exhibit 1)**

4              Do I have your permission to write on

5  this document?  Is this my copy?

6      FISCHER:      That is your copy.

7      LINDSEY:      Okay.  Then I can write Exhibit A on

8  this?

9

10     FISCHER:      Sure.

11     LINDSEY:     -- any objections to that?  Do you have

12  Verification from anyone else, like the Austin Center where I

13  filed my return for 1999?   Would there be any other

14  certification from that center, the Examinations Branch, the

15  Collections Branch, the folks that determine that I had filed

16  frivolous penalty, would there be anything like that?

17     SWALL:      I guess I'm not quite understanding.

18  Do I have any other evidence, anything with me today?

19     LINDSEY:     Any other Verification from --

20     SWALL:      No.  I don't other than --

21     LINDSEY:     Not from here, Las Vegas, or from

22  Ogden, but from Austin where I submitted the – my return?

23     SWALL:      No.  No, I do not.  No, I do not.

24     LINDSEY:     Because I was living in Texas at the

25  time.

C-10

1    SWALL:          That's correct and no, I do not.

2    LINDSEY:        Okay.  In connection with the frivolous

3    penalty proposed or imposed, do you have any supporting

4    documents showing who imposed the penalty and who authorized

5    it?

6    SWALL:          No.  Other than the Certificate of

7    Official Record, I do not.

8    LINDSEY:        So you have none?

9    SWALL:          Not here today, no.

10   LINDSEY:        Are you aware that there is a Code

11   Section that dictates that the IRS will, when they're issuing

12   a frivolous penalty, that the individual that issues it, his

13   supervisor must sign off on the document?

14   SWALL:          Yes, I am aware of that.

15   LINDSEY:        Do you have a copy of that document, or

16   what document is that?

17   SWALL:          I don't have a copy of the document.  I

18   have requested those documents but, I believe, due to the fact

19   that it's coming from the Austin Service Center –

20   LINDSEY:        Uh – huh. (Affirmative)

21   SWALL:          -- I have not received them to date.

22   That request was made on September 27th, and I do not have that

23   in my possession at this time.

C-11

1    LINDSEY:        Okay.  How would I get a copy of that?

2  Do you know what document it is?  Is there a form number or

3  some sort of document?

4    SWALL:          I believe it's a letter that's issued.

5  I —

6    FISCHER:        Okay, let me just look in here a

7  second, if I may, okay?

8    LINDSEY:        Sure.

9
     FISCHER:        The questions that you're asking have

10  to go with re-establishing the validity of the assessment.

11  That's not the purpose of the Collection Due Process Hearing

12  in appeals.  The purpose here is to discuss collection

13  alternatives.  The fact of the matter is the information

14  you've requested is properly requested with the disclosure

15  officer at 210 East Earl Phoenix, Arizona under the Freedom of

16  Information Act.

17
     The information that Mrs. Swall is

18
   providing you today --

19
     LINDSEY:        Uh - huh. (Affirmative)

20
     FISCHER:        -- she is doing as a courtesy.

21
     LINDSEY:        As a courtesy?

22
     FISCHER:        Correct.

23

24

25

1       LINDSEY:     Well, I think in 6330 C it gives me the

2   right to be heard and to ask questions about why, you know, to

3   explain the law to me.

4       FISCHER:     Pardon me.

5       LINDSEY:     That's part of the mission of the IRS,

6   is it not?

7       FISCHER:     6330 gives you the right to examine the

8   proposed collection enforcement action and to ask if it was

9   properly – if it's the proper action to be taken.  Now, it's

10   not to re-establish the validity of the assessment.

11

12       LINDSEY:     It's not?

13       FISCHER:     No.

14       LINDSEY:     In her letter she said that, I think

15   she said that, I have a copy of her letter here.

16       FISCHER:     No – the – she –

17       LINDSEY:     Could I speak?

18       FISCHER:     Certainly, please do.

19       LINDSEY:     Her letter is dated, to me, is dated –

20   see if I could find the date on it – October the 18th, 2001.

21       SWALL:     Actually, I'm sorry, it's dated

22   September --

23       LINDSEY:     Oh, that's the time of the hearing.

24   I'm sorry, you're correct.  September the 27th.  I was looking

25   over here.  September 27th, 2001 is the date of the letter and

C-13

13

it – in the second paragraph it says, "…You may raise an issue – an issue the validity the underlying assessment only if you did not receive a statutory Notice of Deficiency or otherwise had an earlier opportunity to dispute the assessment. I have not.

FISCHER:        Did you get --

LINDSEY:        So why would I not be able to be allowed to establish the validity of the underlying assessment and even, in fact, the validity of this frivolous penalty.

FISCHER:        First of all, did you receive letter 3176 from the Service Center, giving you an opportunity to provide a corrected return, after you filed your 1999 return?

LINDSEY:        You'd have to show me a copy of it.  I don't – I got a lot of letters and I didn't read all the forms on there.

FISCHER:        Okay.

LINDSEY:        I did get that form 1058 that she showed me but I didn't get – I don't think I got that copy, but if you show me a copy of it, I didn't bring everything I have because it's a stack like this.

FISCHER:        Okay.  Was this assessed out of –

SWALL:          It was assessed out of the Austin Service Center.

FISCHER:        Out of the Austin Service Center?

O-14

14

1    SWALL:          Uh -huh. (Affirmative)

2    FISCHER:        Okay.  The - did you submit your 1999

3    return showing zero taxable income?

4    LINDSEY:        Yes, I did.

5    FISCHER:        Did you have any income or, let's see,

6    distributions?

7    LINDSEY:        Distributions?

8    FISCHER:        Okay.  Yeah.  Our records show that you

9    did, indeed.

10   LINDSEY:        Well, I'm not here to establish the

11   validity of my tax return.  She said she wanted to focus only

12   on this penalty - this frivolous penalty - and I would like to

13   keep that at this time.

15   FISCHER:        Correct. Which, the frivolous penalty—

16   LINDSEY:        If you're going to open this up as an

17   issue, then I - then I under 6330 I think I can challenge the

18   validity of the - of my liability for the tax, the underlying

19   tax, could I not?

20   SWALL:          Mr. Lindsey, do you believe that --

21   that wages or - or any kind of compensation is income?

22   LINDSEY:        It depends on what the definition of

23   income is.  My definition is born out by three Supreme Court

24   decisions.  If you want to get into that --

25   FISCHER         Well, I --

C-15

15

1    LINDSEY:        -- my position and belief is that it's

2  a corporate profit and I'm not a corporation and I don't have

3  a profit.

4    SWALL:        Okay.  Are you here today - do you wish

5  to discuss any collection alternative that might be available

6  to you?

7    LINDSEY:        I do, but I'd like to ask my other

8  three questions and you can either answer them or deny

9  answering them or provide me with information --

10    SWALL:        Go ahead.

11    LINDSEY:        -- and I'll be happy to discuss

12  collection alternatives.

13

14    FISCHER:        Okay.  Go ahead.

15    LINDSEY:        Okay.

16    FISCHER:        We're not going to get into issues that

17  regard the making of the assessment.  Now, if you are

18  challenging the underlying existence or amount of the

19  liability, because you didn't have the opportunity to do so

20  before.

21    LINDSEY:        I'm not disputing the amount at all.

22    FISCHER:        You're not disputing the amount?

23    LINDSEY:        No.  I'm disputing the 6702 or whatever

24  Section it is that establishes that.

25    FISHCER:        Okay.  Did you have --?

C-16

1      LINDSEY:          Establishes your authority to issue a

2   frivolous penalty.

3      FISCHER:          Did you receive distribution from Bear

4   Stern Securities Corporation?

5      LINDSEY:          That is not an issue that were to

6   discuss today, according to her comments on the tape and the

7   letter that she sent.  She said she wanted to focus on this

8   penalty.

9      FISCHER:          Did you receive non-employee

10  compensation for 67 — 68?

11     LINDSEY:          What is it?

12     FISCHER:          Non-employee compensation.  Form 1099

13     

14  Miscellaneous Income.

15     LINDSEY:          Did I receive that?

16     FISCHER:          In 1999.  Yes.

17     LINDSEY:          Did I receive money?   Yeah, but I

18  didn't receive income.

19     FISCHER:          Okay.  Did you receive --?

20     LINDSEY:          Under your definition –

21     FISCHER:          -- this shows distribution of $216,783

22  in 1999.

23     LINDSEY:          Again, that's not the issue we're here

24  to discuss today.

25     FISCHER:          Did you receive the money?

C-17

17

1   LINDSEY:      I would like to finish asking my
2   questions and she asked if I wanted to discuss collection
3   alternatives.
4       FISCHER:      Can you answer my question?   Did you
5   receive that money?
6       LINDSEY:      I don't have an answer for your
7   question.
8       FISCHER:      Did you receive the money?
9       LINDSEY:      I don't have an answer for your
10  question because that's not the purpose of the hearing.
11      FISCHER:      Okay.  Okay.  In your – in the absence-
12      LINDSEY:      6330 C allows me the opportunity to
13  come in here and be heard about this frivolous penalty --
14
15      FISCHER:      In the absence --
16      LINDSEY:      -- and her letter says right here,
17  "...*You may raise as an issue the validity of the underlying*
18  *assessment only if you did not receive a statutory Notice of*
19  *Deficiency or otherwise had the opportunity to dispute the*
20  *assessment...*"
21      FISCHER:      Okay.
22      LINDSEY:      Okay.  I haven't received anything.
23      FISCHER:      We believe you did receive this income.
24      LINDSEY:      This hearing will focus upon the civil
25  penalty assessment of the period ending December 31st, '99.

C-18

18

1    FISCHER:        We believe that you did receive these

2  distributions.  You have not said you did not receive the

3  distributions.  You admitted that you did file a tax - a zero

4  tax due return.

5    LINDSEY:        Yes.

6    FISCHER:        Therefore, according to IRC 6702, the

7  return you filed was frivolous.

8    LINDSEY:        Okay.  6702, in my opinion, is benign.

9  It has no force and effect of law because there's no

10 implementing legislative regulation that establishes it.

11   FISCHER:        We appreciate your opinion and you're

12 certainly entitled to take that before -

13   LINDSEY:        Can you show me --

14   FISCHER:        -- to the District Court.

15   LINDSEY:        -- could you show me a regulation --?

16

17   FISCHER:        Would you like to talk about collection

18 alternatives?

19   LINDSEY:        No.  I would like to ask the other

20 questions here if you don't mind -

21   FISCHER:        Are these other questions -

22   LINDSEY:        So that I may have due process here in

23 this hearing.

24   FISCHER:        Okay.  Go ahead and ask the questions.

25 We're not going to answer any questions that have to do with

Q-19

1   the making of the assessment.  These are properly addressed to

2   the disclosure officer, but, please, do ask the questions so

3   we can be sure as to their nature.

4         LINDSEY:       Under 6330 it says that I have the

5   right to obtain written Verification from the Secretary of the

6   Treasury that the requirements of the laws, which I assume is

7   the Code.  Is that true, or administrative procedures that's

8   your procedures, what you go through --?

9         FISCHER:       Actually, 6330 does not say that.

10        LINDSEY:       -- have been met - have been met as

11  required in the Internal Revenue Code Section.

12        FISCHER:       What 6330 says is that the appeals

13  officer will obtain Verification from the Secretary.  It does

14

15  not say that the appeals officer will provide it to the

16  taxpayer.  That is what 6330 says.  Now, please go on to your

17  next issue.

18        LINDSEY:       Well, why would I have a Due Process

19  Hearing if I couldn't have that information provided to me so

20  that I can make some sort of educated decision as to whether

21  or not this law is applicable to me?

22        FISCHER:       The information that you are

23  requesting--

24        LINDSEY:       What's the purpose of a Due Process

25  Hearing if this - if your interpretation of this Statute or

Q-20

this Code Section 6330 is that you're going to obtain this

Verification from the Secretary and not provide me with

anything?

    FISCHER:   We --

    LINDSEY:   I mean you've already provided me with

this.

    FISCHER:   It's the appeals function to be an

alternative dispute --

    LINDSEY:   Uh - huh.

    FISCHER:   -- resolution authority.

    LINDSEY:   Sure.

    FISCHER:   What we do is we review the case file

to make sure that collection took all the proper steps, that

the assessment is valid.  We have done that.  It's - there's

not - nothing in the law that says we are to provide that to

you.  If you want that information, it is not properly

obtained through appeals.  It is properly obtained through the

disclosure officer under the Freedom of Information Act.  Now,

please go on to your next question.

    LINDSEY:   It says in 6330 and I don't know what -

    FISCHER:   Please go on to your next question.

    LINDSEY:   -- that you're to present that to me.

C-21

1    FISCHER:        It does not say that.  It says that we

2  will obtain Verification.  It doesn't say – it says nothing

3  about providing it to you.

4    LINDSEY:        Do you mind if we look at that Code

5  Section in my Internal Revenue 2000 –

6    FISCHER:        Please do.  Please do.

7    LINDSEY:        (Looks through Internal Revenue

8  Codebook) I'm looking for Section 6330 and  -- Code Section

9  6330 --

10    SWALL:         I believe I do have the part that Mr.

11  Lindsey is referring to.

12    FISCHER:        Okay.

13

14    LINDSEY:        Does it not say somewhere in this Code

15  Section -- there's a lot here –

16    SWALL:         There is a lot.

17    LINDSEY:        -- that the information is to present –

18  be presented?

19    SWALL:         Mr. Lindsay, if I may, this might be

20  the part that you're looking for.  Under 6330 –

21    LINDSEY:        Uh – huh. (Affirmative)

22    FISCHER:        However, you are reading from the

23  Regulations.

24    SWALL:         That's true.  I'm reading from the

25  regs.  I'm sorry.

C-22

1     LINDSEY:    Well, that's a good place to read from
2  because the Privacy Act in the 1040 booklets tells me, as a
3  taxpayer, that I'm to comply with Regulations.

4     FISCHER:    There are no implementing regulations.
5  That has already been through the courts --

6     LINDSEY:    There's no implementing --

7     FISCHER:    -- as implementing regulations required
8  for IRC 6702.

9     LINDSEY:    Okay.  Well, I have a letter here
10  that's totally different from that.

11     BENSON:    What was that based on?
12

13     FISCHER:    There's a court decision out and I
14  would have to get the name of that.

15     LINDSEY:    Could you get that for me?

16     FISCHER:    Yes.  I'm sure that Mrs. Swall could
17  provide that to you.

18     BENSON:    You don't remember the name of the
19  decision, by any chance?

20     FISCHER:    I can't remember it right now.

21     SWALL:    And I'm sorry, you're going to have to
22  rephrase for me what is it that I'm --?

23     FISCHER:    There's a District Court decision.
24

25     SWALL:    A court decision.

Q-23

1    FISCHER:    There's a District Court decision out
2  that says that no implementing regulations are required for
3  IRC 6702.

4    LINDSEY:    Is that Ninth Circuit?  In the Ninth
5  Circuit, where is that, do you know?

6    FISCHER:    I don't believe it is Ninth Circuit.
7  It hasn't been challenged in Ninth Circuit.

8    LINDSEY:    Has it been since 1998 Restructuring
9  Act?
10

11    FISCHER:    I'd have to go back.

12    LINDSEY:    Most of the court decisions that I've
13  seen that, as you have indicated in your letters, refute my
14  allegations or my arguments have been right prior to 1998 and
15  I don't think they really take up some of the issues --

16    FISCHER:    Okay.  This is the argue -

17    LINDSEY:    -- that have been presented in 6330.

18    FISCHER:    -- this is the argument that has been
19  heard many, many times in the courts and no taxpayer has yet
20  prevailed.  So you're certainly entitled to keep your opinion
21  and to raise it in the District Court -

22    LINDSEY:    Sure.

23    FISCHER:    -- if you choose to do that, but lets
24  go on.

25    LINDSEY:    Can I ask the rest of my questions?

C-24

1    FISCHER:       Please.

2    LINDSEY:       Okay.  I'm familiar with an IRS Form

3    330.  Are you familiar with that form, in connection with the

4    determination of a - of the - imposition of a frivolous

5    penalty?

6    FISCHER:       Again, were talking about

7    administrative matters here.  We're not going to get into

8    that.

9    LINDSEY:       Okay.  Could you tell me if you're

10   familiar with it?  Have you ever seen a Form 330?

11   FISCHER:       I probably have seen one.  I couldn't

12   say to you off the top of my head if I've seen one or not.

13   LINDSEY:       Could I show you one and see if it will

14   refresh your memory?

15   FISCHER:       Sure.  Can you tell me how it's

16   relevant here?

17   LINDSEY:       I think it's relevant to the - to my

18   understanding of the validity of the imposition of this

19   penalty.

20   FISCHER:       Okay.  Please -

21   LINDSEY:       And that it would help me understand

22   the procedures that adhere to - to obtain and reviewed under

23   this 6330 C (1) have been met.  That you had met the

24

25

C- 25

1    requirements of the administrative procedures that the IRS is

2    required to meet under this.

3            FISCHER:       Okay.

4            LINDSEY:       And that would help me establish the

5    validity of this, to me, to help to establish the validity of

6    this imposition of this penalty.

7            FISCHER:       Okay.  Do you have the 330 then?

8            LINDSEY:       I think I do.  And it is – while I'm

9    looking for that – it is you alls position – the IRS's

10   position that you're not required to have an implementing

11   legislative regulation.

12           FISCHER:       There's no --

13           LINDSEY:       To implement 6702.  That you're not

14

15   required to have that.

16           FISCHER:       6702, no regulations are required for

17   IRC 6702.

18           LINDSEY:       Okay, and what do you base that on,

19   this one court decision?

20           FISCHER:       That's the only time it's been

21   challenged.  Well, it's been challenged several times I'm sure

22   but that's the overriding opinion, yes.

23           LINDSEY:       I'm challenging it, today, Okay?

24           FISCHER:       Okay.  That's fine.

25

C-26

1      LINDSEY:        If I could find this stuff.  I've got

2  too many papers here.  Let the record show I'm showing a Form

3  330, IRS Form it's entitled, **Penalty Screening Committee Case**

4  **Approval Record** and it shows pertinent information about the

5  frivolous penalty, the determination of a frivolous penalty

6  and the required signatures for the frivolous penalty

7  including the group manager, the initial IRS employees

8  signature is usually required on it, from my understanding,

9  from the examination branch -- hit Austin Texas.  That's the

10 only copy I have is that one there.

11     FISCHER:        Okay.  This is an administrative

12 matter.

13     LINDSEY:        Uh - hum. (Affirmative)

14     FISCHER:        This is not by Code or Regulation.

15     LINDSEY:        Uh - hum. (Affirmative)

16     FISCHER:        It is an internal matter and,

17 therefore, it's an administrative matter, which is not

18 determinant in the validity of the assessment.

19     LINDSEY:        Okay.  But it is something under 6330

20 that you would be required to obtain for Verification --

21     FISCHER:        No.  We are not required --

22     LINDSEY:        Even though you say that you don't have

23 to give it to the taxpayer.  It's something you'd be required

24 to obtain.

C-27

1    FISCHER:        No.   That's not correct.

2    LINDSEY:        It's not, then I don't understand the

3    reason of 6330 C (1) then.

4    SWALL:        Mr. Lindsey, can I just say that what

5    I've requested in my back in September 27th, may very well, if

6    I had that here today, may very well include the document

7    you're referring to Form 330.

8    LINDSEY:        Okay.

9    SWALL:        So it has been --

10   LINDSEY:        So it may be coming.

11   SWALL:        It may be.

12   LINDSEY:        Okay.  Would I be able to get a copy of

13   that sent to me when you have it?

14

15   SWALL:        Yes.

16   LINDSEY:        Okay.

17   FISCHER:        You, actually, have the copy there.

18   LINDSEY:        No.  This is a copy from somebody

19   else's back in – what year was this?

20   SWALL:        Oh, from someone else, okay.

21   LINDSEY:        This one's dated 3/15/2000 for the '99

22   tax years for some other person that loaned it to me.

23   FISCHER:        All right.  And why do you believe that

24   these other signatures are required here?   What -- what's the

25   source of your information?

Q-28

LINDSEY:        The source of information?

FISCHER:        Yeah.  What do you think should be shown on there?  How many signatures?

LINDSEY:        I think – I think – well, the supervisor should sign on not just the examination branch person that --

FISCHER:        So, you believe there should be two signatures on there?

LINDSEY:        Yeah.  There's a Code Section 6751. Can I read it to you?

FISCHER:        Sure, go ahead.

LINDSEY:        This is Code Section 6751 – Procedural Requirements – Computation of penalty including a notice is paragraph A and then paragraph B is approval of assessment. *"No penalty under this title shall be assessed unless the initial determination of such assessment is personally approved, in writing, by the immediate supervisor or the individual making such determination or such higher level official as the Secretary may designate."*

FISCHER:        And that's for 6702 penalties?

LINDSEY:        Let's see, it's for – does it list it down here somewhere?  I read that somewhere – the penalty was covered.  I'm pretty sure it's 6702.

FISCHER:        Okay.  Well –

C-29

1    LINDSEY:        Let me see if it is right quick.

2    FISCHER:        Mrs. Swall will certainly research that

3    and consider it, so let's go on to your next item, please.

4    LINDSEY:        Does she know that the supervisor was

5    required to sign it?  Did you know that at the time?

6    FISCHER:        I'm not sure that that's the case

7    because I'm not sure this applies to 6702.

8    LINDSEY:        Okay.  Okay.

9    FISCHER:        But we'll certainly look into it.

10   LINDSEY:        Okay.

11   FISCHER:        Okay?

12   LINDSEY:        Would there be any other document,

13

14   other than this 330 that I've shown you?  Would there be any

15   other document that would satisfy the requirements of this

16   6751 B?

17   FISCHER:        Okay.  Can you tell us a specific –

18   LINDSEY:        That – that --

19   FISCHER:        Do you have --?  No.  No. Let me just

20   say this.

21   LINDSEY:        Sure.

22   FISCHER:        Okay.  Absent a specific objection to

23   the making of the assessment –

24   LINDSEY:        Uh – um. (Affirmative)

25

C-30

1    FISCHER:        -- we have no further obligation, so

2    you tell us where the assessment was invalid.  We will

3    consider that.  We will look at it.  We will review it.

4    LINDSEY:        Okay.

5    FISCHER:        Can you tell us where the assessment

6    was invalid?  You can't right now because --

7    LINDSEY:        Well, I have already mentioned that, I

8    believe, 6702 is benign, the Code Section.

9    FISCHER:        Because of the regulation.  Okay.

10   LINDSEY:        Right --

11   FISCHER:        Yes, uh - huh.

12   LINDSEY:        -- because it doesn't have an

13

14   implementing legislative regulation.

15   FISCHER:        Okay.  We disagree on that.

16   LINDSEY:        You're - Okay, that's fine.

17   FISCHER:        What's your next issue on that then?

18   LINDSEY:        I have a couple of more questions here

19   that would bring those issues up --

20   FISCHER:        Okay.  You had - you said you had three

21   a minute ago, so --

22   LINDSEY:        I think it was two or three left.

23   FISCHER:        Okay.

24   LINDSEY:        I don't recall getting a Statutory

25   Notice and Demand for Payment of this penalty.  Was there a

C -31

31

1    notice sent to me, and if there was, do you have a file copy

2    of that notice, or whatever you claim is to be the Statutory

3    Notice?  Is that the 1058 Form here?

4        FISCHER:       Well, no. It is not.

5        SWALL:         No.  If I may?

6        LINDSEY:       Sure.

7        SWALL:         I believe the Statutory Notice falls

8    under – and, Donna, you can correct me – 6331 is it?

9        FISCHER:       (To Renee Swall) Okay.  You will have a

10   Notice and Demand there and you will also have it on your

11   transcript. Let me see your other transcripts.

12       FISCHER:       (To Lindsey) Your Statutory of balance

13   due is Notice and Demand.  Your certified transcript shows it

14   was issued February 18th of 2000.

15

16       LINDSEY:       You're saying that the Statutory Notice

17   of the balance due is my Notice and Demand --?

18       FISCHER:       That's correct.

19       LINDSEY:       -- my Statutory Notice?  What – what

20   does that look like?

21       FISCHER:       That's correct.

22       LINDSEY:       Could you show me a copy of it?

23       FISCHER:       We don't –

24       LINDSEY:       The one you sent me.

25

O-32

1    FISCHER:        -- we do not have a copy at this state,

2    nor are we required to have a copy.  The courts have held that

3    this is all we have to have.  Is the statute - is the

4    certified assessment record.

5    LINDSEY:        The courts have held?

6    FISCHER:        Yes.

7    LINDSEY:        What courts?  Show me a cite.  A

8    Supreme Court decision, appellate - any kind of court.

9    FISHCER:        We will - we will send that to you.

10   Lets --

11

12   LINDSEY:        You will send it to me?

13   FISCHER:        Yes.  Mrs. Swall will send that to you.

14   LINDSEY:        So, you don't have a copy of the

15   Statutory Notice and Demand that you sent me?  You don't have

16   a copy of that, now?

17   FISCHER:        All we're required to have is the

18   Certified Records of Assessments.

19   LINDSEY:        There are some court decisions that

20   disagree with that and I'll have them - I'll have them --

21   FISCHER:        Which ones are they?  You send those to

22   us, okay.

23   LINDSEY:        There are some.  There are some.

24   FISCHER:        No.  Please, send those to us.  When

25   can we expect them?

Q-33

1    LINDSEY:        Okay.

2    FISCHER:        Mr. Lindsey, when can we expect them?

3    LINDSEY:        Okay.  Look I don't want to get

4    confrontational.

5    FISCHER:        No.  I hope not.  Actually, we'd really

6    like --

7    LINDSEY:        I sense that we're kind of getting

8    tense here, and I don't want to do that.  I'm not the enemy.

9    FISCHER:        No.

10   LINDSEY:        I'm a citizen.

11   FISCHER:        Absolutely.

12   LINDSEY:        You are a public servant.

13   FISCHER:        We are.

14   LINDSEY:        And so is Ms. Swall.

15   FISCHER:        Let me just say, Mr. Lindsey --

16   LINDSEY:        And you all have been very gracious, so

17   far.

18   FISCHER:        Let me just say the reason that there

19   might be a bit of frustration here -

20   LINDSEY:        Uh - huh.

21   FISCHER:        -- if we may speak to you, please?

22   LINDSEY:        Sure, go ahead.

23   FISCHER:        Is that we have - the issues you are

24   raising have been raised hundreds of times.

C-34

1    LINDSEY:        Sure.

2    FISCHER:        People have – numerous taxpayers

3    proceed to the courts.

4    LINDSEY:        Right.

5    FISCHER:        District Court –

6    LINDSEY:        Especially, since the 1998

7    Restructuring Act.   They have been raised a lot more.

8    FISCHER:        Well, because that's what gave them the

9    Collection Due Process.

10

11   LINDSEY:        That's what gave them?   You mean the

12   citizens, the taxpayers, gave us that right?

13   FISCHER:        Gave us all that right.

14   LINDSEY:        Exactly.

15   FISCHER:        Okay.

16   LINDSEY:        Yeah.

17   FISCHER:        Provided the public --

18   LINDSEY:        I mean you even have that right.

19   FISCHER:        Correct.   I do.   Absolutely, and I

20   appreciate all the rights that I have.   Okay?

21   LINDSEY:        Sure, yeah.

22   FISCHER:        And there were --

23   LINDSEY:        And you want to protect them.

24

25

C-35

35

1   FISCHER:        -- and there were, definitely, some

2   abuses in the collection process before, but this is not one

3   of them.

4   LINDSEY:        Have you read the Senator's books,

5   Senator William Roth's book?  **_The Power to Destroy?_**

6   FISCHER:        **_IRS the Power to Destroy?_**  Yes.  Yes,

7   uh – huh.

8   LINDSEY:        So those abuses were there and you

9   don't deny that those occurred, do you?

10  FISCHER:        I --

11  LINDSEY:        You're aware that they did occur prior

12  to the '97 hearings.

13  FISCHER:        I – okay.  I think that if you will

14  research, you'll find that there's additional information out

15  on that that show, yes, there is abuse in any system,

16  especially, when there is a tremendous volume handled like the

17  IRS handles, Okay, in the tax system and the RA was designed

18  to –

19  LINDSEY:        The who?

20  FISCHER:        RA 1998. Okay.  Revenue Reconciliation

21  Act 1998 was provided for relief for all taxpayers who might

22  have experience to be --

23  LINDSEY:        Exactly.  Yes, I agree.

C-36

1   FISCHER:      Okay.  This is not the abuse.  The IRC

2   is very clear on what is income and what are filing

3   requirements and as I just wanted to speak to you, that we

4   have seen these issues raised, repeatedly.  Particularly, not

5   only post 1998 but prior to 1998 –

6   LINDSEY:      Sure.

7   FISCHER:      -- with exam cases.

8   LINDSEY:      Exactly.

9   FISCHER:      Okay?  I – I have to say that no one

10  prevails.  It's -- it's futile and you're certainly welcome to

11  go to court –

12

13  LINDSEY:      Uh – huh.  (Affirmative)

14  FISCHER:      -- so, please, what's your next issue?

15  LINDSEY:      Well, I was hoping to resolve matters

16  here.  No one likes to go to court, you know, go through all

17  that expense.  I don't know why I should.

18  FISCHER:      Right.

19  LINDSEY:      I don't know why I shouldn't learn and

20  know all of these different hundreds or thousands of Statutes.

21  FISCHER:      It's because we've seen –

22  LINDSEY:      12,000 pages.

23  FISCHER:      We have seen –

24  LINDSEY:      I would venture to say that you don't

25  know them all or even half of them.

C-37

1    FISCHER:        Absolutely, not.

2    LINDSEY:        Yeah.

3    FISCHER:        Absolutely, not.

4    LINDSEY:        Yeah.

5    FISCHER:        Okay.  I would certainly have to

6    research the issues but let me just say that we have some

7    major disagreements here.  Our -- our arguments are based on

8    what we've seen in the past, on the Code as we understand it—

9         LINDSEY:        Sure.  Exactly.

10

11    FISCHER:        -- and I don't think - it doesn't

12   appear that we're going to come to a mutual understanding.

13        LINDSEY:        I mean if we can't, then you know, I

14   know what my alternatives are.

15        SWALL:          The Code is a guide and I think what we

16   have to - to - to hang our hats on is the case law.

17        LINDSEY:        The Code is, actually, the law.

18        SWALL:          It's the law but what brings that law

19   out and sets the precedents are the case law or the - or the

20   actual case --

21        LINDSEY:        Case law is binding on the IRS.

22        FISCHER:        That's right.

23        LINDSEY:        But it was not necessarily binding on

24   the taxpayer.

25

$Q - 38$

1          SWALL:          Well, I think we can agree to disagree.

2    Anything further?

3          LINDSEY:        Yeah.  Can I finish asking my

4    questions?

5          FISCHER:        Sure.

6          LINDSEY:        -- and then we'll get into whatever you

7    have there.  So you  -- you don't know for sure if there is a

8    Statutory Notice and Demand.  You don't know what it is for

9    sure?

10

11         SWALL:          No.  I do know what it is.

12         FISCHER:        No. No.

13         LINDSEY:        What is it?

14         SWALL:          It is the Notice that's referenced here

15   in the transcript that went out to you – It's the first

16   notice.

17         LINDSEY:        Oh, the Statutory Notice of balance

18   due--

19         SWALL:          Right.  Is what we call –

20         LINDSEY:        -- and you sent that to me on this

21   date, apparently.

22         FISCHER:        Right.  Yes, that's correct.

23         LINDSEY:        I don't know if I have a copy of it and

24   I would like to get a copy of that at some later date.

25

$C-39$

1     FISCHER:        Okay.   We will not provide you with a

2    copy of that because we're only required to provide you with

3    this.   Those are computer --

4     LINDSEY:        Then I can - I can, under the Freedom

5    of Information I can request it, right?

6     FISCHER:        You can request it.   I believe that

7    what you'll receive is the same thing because those Statute -

8    those Notices and Demands are systemically issued --

9     LINDSEY:        Uh - huh.

10     FISCHER:        -- and therefore, I'm not - I do not

11    believe -

12     LINDSEY:        But a Statutory notice and demand is on

13    a specific form, is it not?

14     FISCHER:        Statutory notice and demand?

15     LINDSEY:        Promulgated by Treasury Decision 1995.

16     FISCHER:        Actually, there are many -

17     LINDSEY:        Are you familiar with that one?

18     FISCHER:        -- there are many Notice and Demand

19    letters sent to most taxpayers -

20     LINDSEY:        Yeah.

21     FISCHER:        -- because they - they will send the

22    first one if they get no response, then the second one will go

23    out.   If the tax is not paid, often a third one will go out.

C-40                                          40

Depending on the taxpayer's record, previous record of tax

compliance.

      LINDSEY:      Right.

      FISCHER:      Okay, and so --

      LINDSEY:      And so some of those could not - would

not necessarily be Statutory Notices and Demand, correct?

      FISCHER:      They would be the notice - they would

meet the requirements of the Notice and Demand as required by

the Statute, yes.

      LINDSEY:      Okay.

      BENSON:      Are you saying that because their

system - they're issued by a system -

      FISCHER:      Systemically issued.

      BENSON:      -- that you wouldn't necessarily - they

wouldn't necessarily keep a copy of them?

      FISCHER:      That's correct.

      BENSON:      That's why they don't have a copy of

it, possibly, because it just went out from a computer -

generated program and it didn't retain a copy.

      LINDSEY:      True, but they don't retain copies of

Notices and Demand.

      SWALL:      It - it - as far as I know, I believe

that could be true.

C-41

41

1   LINDSEY:      Okay.  All right, then we'll go on from

2   here.  I'll ask a question and you may not want to get into

3   this because you haven't authorized it in your letter or

4   comments, Mrs. Swall, is it Mrs?

5       SWALL:         Yes.

6       LINDSEY:       Mrs. But my understanding under 6330 C

7   (2)b at my Due Process Hearing, I am allowed to challenge the

8   liability of the underlying tax – my liability for the

9   underlying tax and I would like to know if you could show me

10  in the Internal Revenue Code any Code Section that establishes

11  my liability for an income tax, requires me to pay an income

12  tax, or provides for a penalty if I don't pay the income tax.

13

14      FISCHER:       Okay.  These questions should be

15  addressed to the disclosure officer under Freedom of

16  Information Act.

17      LINDSEY:       Okay, but in 6330 it says I'm allowed

18  to raise these issues.

19      FISCHER:       Do you have a specific objection that

20  we could help you with?

21      LINDSEY:       I'm raising an issue.  I'm not

22  objecting to anything.  I'm trying to gather information.

23      FISCHER:       Okay – and – I – Mr. – Mr. Lindsey, I –

24  I – I explained to you before.  It's not the purpose of the

25

C-42

Collection Due Process Hearing to reestablish the making of the validity of the assessment.

LINDSEY:       Okay, and that's the IRS's opinion?

FISCHER:       Correct.

LINDSEY:       In my opinion, it's totally different from reading this.

FISCHER:       Okay.  All right.  We have provided —

LINDSEY:       So, we disagree - we disagree on that, okay.

FISCHER:       -- right.  We've provided you with a certified transcript --

LINDSEY:       Okay. So, you can't answer that question?

FISCHER:       That's not --

LINDSEY:       Or you won't answer that question?

FISCHER:       Correct.

LINDSEY:       Okay.  All right.  Okay, well let's talk about alternative collections.  I'm ready, willing and able to pay this $500 penalty, right now, if, and it's contingent on whether or not there's a Statute requiring me to pay the penalty at issue and that is relative as to whether or not I have to pay the penalty.

FISCHER:       Okay.

C-43

1      LINDSEY:      Can you identify for me the Treasury

2  Regulation, which I'm to comply with, according to the Privacy

3  Act, or Code Section that requires me to pay this frivolous

4  penalty?  Here's my Internal Revenue Code.  You may have one,

5  too, but I'll go by yours, as long as it's at least 2000.

6      FISCHER:      I think that we talked a little bit –

7      LINDSEY:      And this one's indexed.  You can look

8  up liability, payment of and all that.

9      FISCHER:      I believe that we discussed earlier

10  that you did submit a return showing zero taxable income, that

11  you did have – you did receive some monies that we discussed

12  earlier, that we believe are taxable.  You believe are not

13  taxable; therefore, since --

14

15      LINDSEY:      No.  I don't believe I'm liable to pay

16  this tax unless I voluntarily comply and self-assess myself.

17      FISCHER:      All right.  We have –

18      LINDSEY:      That's my belief and position because

19  of what this book says.  Your law, the Internal Revenue Code.

20      FISCHER:      Great.  Great.

21      LINDSEY:      There's nothing wrong with this Code.

22      FISCHER:      No.  There's absolutely nothing wrong.

23      LINDSEY:      If you read it and go by it, like Mrs.

24  Swall said it's a guide.

25      FISCHER:      Right.

C-44

1    LINDSEY:        And it's a guide because it's the law.

2  It's a Code of Federal Regulations of the Regulations

3  themselves, the Treasury Department Regulations, which I have

4  been instructed by the Privacy Act to comply with.

5    FISCHER:        We appreciate your coming in for the

6  hearing today, and it's now concluded.  Thank you very much.

7  You will be getting a determination letter, from Mrs. Swall,

8  actually, it will be signed by her manager.

9
10    LINDSEY:        Okay.  All right.

11    SWALL:          In, approximately, two weeks I would

12  say.

13    LINDSEY:        Very good.  So we didn't answer the

14  last question then?

15    FISCHER:        That's correct.

16    LINDSEY:        Not the collection – collection

17  alternatives but the one before that.

18    FISCHER:        Which was the last question, again?

19    LINDSEY:        My --

20    SWALL:          Him paying.

21    LINDSEY:        -- about – no – about liability for the

22  income tax.

23    FISCHER:        Oh, that you – you don't believe that

24  you're liable --?

25    LINDSEY:        No, I don't believe I am --

C-45

1         FISCHER:       -- that the income tax laws apply to

2   you?

3         LINDSEY:       -- and I'd like for the IRS - what I

4   want the IRS to do is to show me a law that requires me to pay

5   the tax and that makes me liable for the tax.

6         FISCHER:     Okay.

7         LINDSEY:     If you can do that --

8         FISCHER:     This Code, read it carefully.

9         LINDSEY:     I have.  I've read it.

10        FISCHER:     And you will see.

11        LINDSEY:     Look --

12        FISCHER:     You read it?

13        LINDSEY:     Look at this.

14        FISCHER:     From beginning to end?

15        LINDSEY:     I've been reading it for a year.

16        FISCHER:     I've - I -

17        LINDSEY:     I probably know - I probably know -

18        FISCHER:     -- I've seen many made tab Codes.

19        LINDSEY:     -- you didn't know about 6751, did you?

20        FISCHER:     I knew about 6751.

21        LINDSEY:     You didn't because you didn't say there

22  was a requirement.

23        FISCHER:     You don't - no.  Thank you very much

24  for coming in.

C-46

1    SWALL:           Thank you.

2    LINDSEY:         All right.

3    FISCHER:         And that is yours.

4    LINDSEY:         Next - next victim.   It's been a

5    pleasure.   Thank you very much.   I appreciate your time.

6    FISCHER:         Good luck to you.

7    LINDSEY:         Thanks.

8    FISCHER:         Good luck.

9    LINDSEY:         Mrs. Swall, thank you. Nice meeting

10

11   you.

12   SWALL:           Mr. Lindsey, bye - bye.

13   LINDSEY:         Are you going to make a transcript of

14   this tape?

15   FISCHER:         No, the tape is our transcript.

16   LINDSEY:         Do you keep the tapes?

17   FISCHER:         Yes we do.

18   LINDSEY:         Is there anyway I could get a copy of

19   your tape?

20   FISCHER:         Yes, you may.

21   LINDSEY:         Okay.   Should I just contact you by

22   phone?   I'll tell you what.   Would you call me when you get

23   that paperwork in from Austin, that you requested?

24

25   SWALL:           Yeah.

C-47

1       LINDSEY:      And then call me and let me know what I

2  can have copies of and a copy of the tape.  Thank you very

3  much. I appreciate it.  Good afternoon.

4       FISCHER:      We need to escort you –

5       LINDSEY:      All right, the time is 3:27 P.M. and

6  the Collection Due Process Hearing is terminated.

7       **(Hearing Terminated at approximately 3:27 P.M.)**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C-48

# PENALTY

# SCREENING

# COMMITTEE

# CASE

*6605*

*did the parties on Penalty Screening Committee*

## APPROVAL RECORD

| Taxpayer's Name | | SSN/EIN | |
|---|---|---|---|

| Years | | | Examiner | |
|---|---|---|---|---|
| 1999 1040 dated 03152000 | | | P 398180 3301 U705 JUL 2 0 2000 | |

| PENALTY(IES) ASSERTED: | Code Section |
|---|---|
| 500.00 | IRC 6702    666 |

### APPROVAL

Approval <u>must</u> be secured from the Group Manager, the Penalty Screening Committee and the Quality Review Section Chief prior to assessment of the penalty(ies).

| Check One | 1. GROUP MANAGER | |
|---|---|---|
| ☑ Approved   ☐ Disapproved | Signature | Date 082900 |

| Check One | 2. PENALTY SCREENING COMMITTEE | |
|---|---|---|
| ☑ Approved   ☐ Disapproved | Signature | Date 082900 |
| | Signature | Date |
| | Signature | Date |

| Check One | 3. QUALITY REVIEW SECTION CHIEF | |
|---|---|---|
| ☐ Approved   ☐ Disapproved | Signature | Date 8/30/00 |

SC Form 330

EXHIBIT D

1

**Internal Revenue Service**
Albuquerque Appeals
5338 Montgomery N.E.
Albuquerque, NM 87109

Date: June 13, 2001

Jan A. Lindsey
1627 Clarksville Ct.
Henderson, NV  89052

**Department of The Treasury**
Small B    1ess/Self Employed

**Person to Contact:**
 Anthony Martinez
**Contact Person ID#:**
 85-00764
**Telephone Numbers:**
 (505) 837-9004
 FAX (505) 837-9006
**Refer Reply to:**
 AP:SB:ALB:AM
**In Re:**
 Collection Due Process-Levy
**Tax Period(s) Ended:**
 December 31, 1999

*Rec:
6/18/01*

Dear Ms. Lindsey:

I have received your request for a Due Process Hearing. I have reviewed your administrative file and your reasons for disagreeing with the Territory Manager's proposed enforcement action. It is my determination that your reasons for disagreeing with the proposed enforcement actions are frivolous and without merit.

The Courts have consistently and repeatedly rejected the arguments you have expressed and, in some cases, they have imposed sanctions. In **Pierson** v. Commissioner, 115 T.C. 39 the Court issued fair warning of penalties under section 6673 to all those taxpayers who, in the future, institute or maintain a lien or levy action primarily for delay or whose position in such a proceeding is frivolous or groundless. In an opinion just issued by the Court in **Regina Davis,** 2001TNT070, the Court imposed a $4,000.00 penalty. Therefore, I am prepared to give you an opportunity to amend your reasons for requesting a due process hearing. Your amendment should be founded upon sound procedural or legal arguments that are not a continuance of your frivolous theories. Please provide your revised arguments to me within 2 weeks from the date of this letter. Without the amendment, your hearing will not be a productive use of your time or mine.

I have scheduled a hearing for July 12, 2001 at 11:00 AM at the address shown above. As an alternative, your hearing may be conducted by telephone at your request. The purpose of the hearing is to discuss your basis for disagreement and any alternative collection methods.

If you have any questions, you may contact me at the number shown above. Thank you very much for your cooperation and prompt attention to this matter

Sincerely,

Anthony Martinez
Appeals Officer

EXHIBIT E

*Fine Copy*

Jan A. Lindsey
1627 Clarksville Ct.
Henderson, NV 89052

*Via CM # 7001·0360·0000·0645·
9298*

Date: June 22, 2001

Anthony Martinez                    Re: IRS Letter dated June 13, 2001
Employee ID # 85-00764                   AP: SB: ALB: AM
IRS Appeals Officer                 Collection Due Process Hearing
5338 Montgomery, N.E.                          (CDPH)
Albuquerque, NM 87109

Dear Mr. Martinez,

I received your letter as referenced above, on June 18, 2001. I would like to clarify an item of misinformation in your letter. I am a Mr. not Ms.

I am notifying you that I am scheduled to have my cancerous prostate gland removed on June 28, 2001 at the MD Anderson Cancer Center in Houston TX. I will not be physically in a position to appear at a hearing in Albuquerque on your scheduled date of July 12, 2001. My understanding from the surgeon is that it takes about 1.5 to 2 months to recover. In light of this conflict and my decision to exercise my right to have a face to face hearing at the IRS Appeals Office, I request that my hearing be conducted at the Las Vegas Appeals Office near my home and rescheduled to at least the last week of August so that I can attend the hearing without undue discomfort and inconvenience. [Ref. Internal Revenue Code (IRC), Section 6304(a)(1).]

Please confirm you concurrence to 1.) Reschedule the date and time and 2.) Change the location of my CDPH from Albuquerque to Las Vegas, NV, by return correspondence.

I sincerely appreciate your offer for me to provide you with the arguments of procedure and law that I will be presenting at the hearing; arguments I believe are based in the law exclusively. I think you will find that the issues I will be raising at the CDPH will neither be frivolous nor without merit and will be well grounded in your own IRS law (Title 26 CFR). I will expect you to consider all the points and issues raised carefully in making your determination as to whether or not to recommend further levy action. I also will expect you to "hew" to the law (IRC) as required by Treasury Regulation 601.106(f) and abide by your published IRS Mission, the provisions of which I am sure you are intimately familiar.

Additionally, in the paragraphs that follow, I am also providing you with an expanded and more specific request for documentation that you are required to provide under provisions of IRC Code sections 6320 and 6330. My reasons for requesting the documents the law entitles me to, are amply set forth in the foregoing.

EXHIBIT F-1

The following documentation (including 4 attachments identified as A-D) is forever made a part of this letter and is entitled "Request for a CDPH and Documentation as provided for in IRC Sections 6320 & 6330":

## REQUEST FOR A CDPH AND DOCUMENTATION AS PROVIDED FOR IN IRC SECTIONS 6320 & 6330

Please note that I have attached (as Exhibit A) *page 73* of Senator Roth's book "The Power to Destroy." It reads, "...recent internal investigations by the Internal Revenue Service itself admit that far too many of the countless assessments, seizures, levies, and liens that the IRS executes each year are inappropriate and in open violation of the law." At the time his book was released, Senator Roth was Chairman of the Senate Finance Committee that investigated the IRS and found wide scale IRS abuse. As a result of the 1997 Senate hearings, Congress established, ***for the protection of the public***, the "Right to fair hearing" (as provided for in Sections 6320(b)(1) and 6330(b)] in order to prevent the ***illegal notices of levy, levies, warrantless seizures*** and other open ***"violations of law"*** as revealed by those investigations and as referred to in Senator Roth's book. Therefore, as an American citizen exercising freedoms guaranteed under the laws of this Democratic Republic, I hereby declare that, if you or any IRS employee attempts to deny me my "Due Process Hearing" ***guaranteed to me by law***, or recommends that seizure action be taken ***without producing the documentation required*** by Sections 6320 and 6330 (and their implementing legislative regulations) or without addressing the *"relevant"* issues I am authorized to raise per those Code Sections, I will seek damages pursuant to Code Section 7433 and ***seek that employee's termination*** pursuant to paragraph 6, Section 1203 of the IRS Restructuring Act of 1998.

Please note that both the Statute (Code Section 6330) and it's implementing Regulation, (301.6330) state, "The person may raise ***any relevant issue relating to the unpaid tax*** or the proposed levy ...challenges to the ***appropriateness of collection actions***, and offer of collection alternatives." Also, both the law and its implementing regulation allow taxpayers to "raise... challenges ***to the existence*** or amount of the tax liability..." (Emphasis added)   Therefore, in order to establish the *legality* and "appropriateness" of any proposed or enforced collection action, I am requesting that you have the following documents at the CDP hearing and be prepared to address certain legal questions which are obviously "relevant" to any determination on your part that "enforced" collection is appropriate:

## VERIFICATION FROM THE SECRETARY (Code Section 6330)

**1)** First and most importantly, I expect you to have at the CDP hearing " documentation representing verification from the Secretary that the requirements of any applicable law or administrative procedure have been met." That is the specific statement documented from the Secretary (or his delegate) that THE *LAW requires* you to have. Please do not tell me at the CDP hearing that in lieu of your having that specific statement documented from the Secretary, you have some little IRS transcript or printout that I "may not understand." The law doesn't say that I have to settle for an IRS printout containing coded entries that I may not understand. It is very specific in stating that you

will provide easily understood information documented from the Secretary.  Also, I am unable to find any paragraph in the law that states that I have to accept your "assurances" that all the "requirements of any applicable law or administrative procedure have been met."  I require documentation as stipulated in the law.  I will not accept any claim of yours that "the court's" have held that an unsigned, computer printout satisfies the legal requirements of Code Section 6330 that you "obtain verification...that the requirements of any applicable law or administrative procedure have been met." [1]  In addition, as far as court decisions are concerned, Treasury Regulation 601.106(f) (attached as Exhibit **B**) states that the appeals officer "***SHALL HEW TO THE LAW***"  (Emphasis added).  There is no Treasury Regulation that states that an appeals officer "***shall hew to court decisions.***"  Therefore I expect that at my hearing, the appeals officer will "hew to the law," and the law ***requires*** that you  "obtain verification from the Secretary" or his delegate, and no other piece of paper, transcript or computer printout fulfills ***this requirement of the law***.

    **2)** Also, pursuant to Code Section 6201(1), before I can owe any income taxes there has to be an assessment based on a "return or list."  I filed a 1040 return showing no taxes due.  Therefore, I don't see how the IRS could have made a ***lawful assessment*** from my return, showing no income taxes due and owing, unless the IRS prepared ***another*** 1040 showing a *different amount* due.  Therefore, at my CDP hearing, I am demanding that the following documentation be made available to me:

    a)  **Proof of assessment.**

        I expect that you will have at my CDP hearing, proof that any income taxes I allegedly owe for 1999 have been assessed.  Please have IRS form 4340 at my CDP hearing certifying that such an assessment has been made.

        In lieu of an actual 23C Summary Record of Assessment and supporting documents properly executed by an authorized official of the IRS, the only other document that would be appropriate to indicate that an assessment has been made would be a Form 4340 signed by an assessment officer certifying that an assessment has been made.  In lieu of a signed 4340, please do not show me an unsigned IRS printout (containing coded entries I won't understand), which you may claim documents that a lawful assessment was made.

    b)  **A copy of the return from which my 1999 assessment was made.**

---

[1] In addition, if you attempt to make such a claim, I expect that you will have a copy of **the specific Court decision** and be able **to point out in that decision,** where a court has ruled that an unsigned, computer generated document satisfies the  "verification" requirement, as contained in both Code Section 6330 and its implementing regulation.

$F-3$

In addition to a form 4340, I expect that the appeals officer will have at the CDP hearing **the 1040 return** from which the IRS may claim my 1999 assessment was made.

Since no assessment greater than zero could have been made from the 1999 form 1040 that I filed (since no income taxes were shown as being due on that return), any other 1040 *return* would have to have been prepared by the Secretary *from which an assessment could have been made* – in order to satisfy the requirements of 6201(1) that assessment *must* be based on "returns or lists."

### 3) Proof that a "Notice and Demand" was sent.
In addition, I never received a "notice and demand" for payment for any 1999 Income taxes.

#### a) A copy of the "Notice and Demand" that was sent to me.

I demand that the appeals officer have at the hearing a copy of any "notice and demand" that the IRS claims was sent to me demanding payment for 1999 income taxes allegedly due. I expect that the appeals officer will have a copy of the statutory "notice and demand" that was sent to me as required by Code Sections 6203, 6321, and 6331, if the claim is made that one was sent.

#### b) Or a blank copy of the "notice"

If the appeals officer claims that he does not have a copy of the *actual* "notice and demand" that was sent to me (because the document was computer generated and the IRS does not retain a copy), then I demand that he, at least, *have a blank copy of that document* at the CDP hearing. There is no reason why the appeals officer cannot have a blank copy of the document that he claims was the statutory "notice and demand" sent to me in connection with the taxes at issue. The IRS must have a form book in which such a document is identified, so it should be a simple matter to make a photo copy of that document. Besides, the IRS must have millions of such blank forms which it has to feed into its computers to generate the "notice and demand" referred to. Therefore, the appeals officer should have no trouble furnishing a blank copy of the document that was sent to me which he/IRS claims constituted the statutory "notice and demand" for 1999 income taxes which are alleged to be owing.

#### c) A Treasury Decision or Treasury Regulation, which identifies the document sent to me as being the statutory "notice and demand".

#### d) In addition to furnishing me with a copy (blank or otherwise) of the statutory "notice and demand" that was allegedly sent to me, *I demand*

*F ⌐4*

*that the appeals officer have either a Treasury Decision or a Treasury Regulation that identifies that document as being the <u>statutory</u> "notice and demand" required by Code Sections 6203, 6321 and 6331* – otherwise what proof would I have that the "notice and demand" that the appeals officer claims is the statutory "Notice and Demand" is actually that document? Since, based on the revelations contained in Senator Roth's book, supra, I would be foolhardy to take an IRS employee at his word.

It is clear that no seizure pursuant to Code Section 6331 is permitted unless the taxpayer "...refuses to pay the same within 10 days *after notice and demand.*" I maintain that I never got the "notice and demand" called for in Code Section 6331. Therefore, unless the appeals officer can prove that such a document was sent to me, **no seizure pursuant to Code Section 6331 is legally possible on *any* basis.** If the appeals officer can not produce a copy of the "notice and demand" he claims was sent to me or even a blank copy of such a document – then what proof can be presented or offered by the appeals officer that such a document was ever sent to me? I will be submitting at the CDP hearing a sworn affidavit that I never received a *statutory notice and demand.* If it is the appeal officer's position that such a document was sent to me, then I demand that he have at the CDP hearing a ***contrary affidavit*** certifying that a statutory "notice and demand" was sent to me, together with a Treasury Regulation or Treasury Decision certifying that that document is, in fact, the statutory "notice and demand" called for by Code Sections 6203, *6321 and 6331.*

4. <u>It is my position and belief that there is no underlying, statutory liability in connection with the income taxes at issue.</u>

a) I am challenging the "existence" of the underlying tax liability, (Sec. 6330(c)(2)(B)) and regulation (301.6330-1T-(e)), as the law as written and specifically permits me to do. If the appeals officer takes a contrary position on this issue and believes otherwise, he need only identify for me the Code Section that establishes such a liability (I will have a copy of the 2000 IRC at the CDP hearing), and I will immediately agree to make payment arrangements (as provided in Code Section 6330(c)(20(iii)] for whatever ***amount*** the appeals officer claims is due. The Index of my 2000 IR Code (published by ***Research Institute of America***) lists some 40 taxes under the caption "Liability for tax"; however, I can find no entry for "income taxes." For example: Code Sections 5005 & 5041 are shown as establishing a "liability" for alcohol taxes; Section 4103 for fuel taxes; Section 5005 for distilled spirits; Sections "4401, 4411, and 4901 et seq." for wagering taxes; and on and on. However, as I have already stated, I cannot find any liability entry for income taxes. However, if the appeals officer can find such an entry, the IRS will have no need to seize any of my property under Code Section 6331; since I will immediately make arrangements to pay whatever the appeals officer claims I owe for 1999 income taxes. By pointing out such a statute and by hewing to the IRC and its' implementing

*F – 5*

regulations, the appeals officer will save the government time and money because I would not be compelled to appeal an adverse CDP determination to Tax Court.

b) The issue of the "existence" of the "underlying liability" is certainly relevant as to whether or not I owe the income taxes at issue. Since the legal "existence" of an income tax liability is academic in that it is an easy thing to establish because anyone can just go to the Index of the IR Code and thereafter go to the indicated code section. Thereafter, I will issue payment for whatever amount the appeals officer claims I owe, *if he merely identifies such a Code Section.* Would not the government's (IRS) interests be served and no more expense be incurred if the appeals officer would merely produce such a Code section if it exists? The only possible reason for not doing so is that *no such Code section exists.*

The Supreme Court stated in "*Federal Crop Insurance v. Merrill*, 332 U.S. 380, that "Anyone entering into an arrangement with the government *takes the risk of* having accurately ascertained that he who purports to act for the government stays within the bounds of his authority." In addition, the Solicitor General of the United States argued to the Court in that case, "Those dealing with an officer or agent of the United States *must be held to have had notice of the limitations* upon his authority." Therefore I had no legal obligation to assume that various and sundry IRS employees sending me computer generated mail, were delegated to send me the mail I received. In addition, I have a copy of a letter from the Treasury Department (attached as Exhibit C) informing the recipient taxpayer that only *legislative* regulations have "the force and effect of law." Therefore, based on these considerations (and the fact that Congress, in Code Sections 6001 and 6011, notified me that I need only "comply with regulations"), I would not be prudent in accepting the written word of an IRS employee who may not be authorized to make demands on me or make determinations for that matter. I have asked (based on the above considerations) the IRS to furnish me with a copy of a delegation order from the Secretary authorizing any IRS employee to "determine" and "send out" IRS claims and demands that I owe a tax or penalty in connection with the return I have submitted. My letters have never been answered. Therefore, I demand that you have at the CDP hearing a copy of the delegation order from the Secretary of the Treasury delegating any IRS employee to determine that I owe a penalty or an income tax other than what I put on my return.

It is my belief and position that I have a right under the law to "challenge" the "existence" of the underlying liability since it has never been established that I received a deficiency notice. In addition, I am not disputing "the amount" of the underlying liability. I am saying that no such "liability" exists *as a matter of law.* And if you can establish that such a "liability" does exist *as a matter of law*, (which should be easy, given the fact that the IRC will be sitting right in front of you at the CDP hearing) I will pay whatever amount you claim is due for my 1999 income taxes. - and you won't have to resort to seizures under Section 6331 to get it. Nor will there be any need for me to appeal an adverse determination to Tax Court. So the only reason for you not to identify a statute, which establishes an income tax "liability", is that no such statute exists.

c) In addition, I am not disputing the "amount" of the alleged income tax "liability", but the very "existence" of an income tax "liability" *as a matter of law*. The Tax Court, not being a court of law, [2] has no jurisdiction to *even* consider such a question. And since your job description (Attached as Exhibit **D**) states that you have "Extensive knowledge of the tax code and regulations," you should be able to identify the Code section that establishes a statutory "liability" if it exists – in the same manner that the Code establishes "liabilities" for other taxes as described in the 1st paragraph of this segment, supra. If you are unable to point out such a statute in the IR Code at my CDP hearing, then any determination on your part that the IRS can seize property pursuant to Code Section 6331 (which specifically provides that that Code section only applies to persons "liable to pay any tax") would be based on fraud and an obvious criminal violation of Code Section 7214.

### 5. It is my position and belief that there is no statute requiring me "to pay" the income taxes at issue.

Another relevant issue is "Whether or not there is a statute requiring me 'to pay' the income taxes at issue." The Index of the IRC contains a Section labeled "Payment of tax." It contains over 60 entries. For example: it shows that the payment of "foreign insurance companies, excise taxes" is in Code Section 4374; "gasoline taxes," in Section 6302; for "tobacco products", in Section 5703; for "wines," in Section 5043 and 5061; for "wagering taxes," in Section 4411; "airline tickets tax," in Section 6302; etc. etc. etc.; however, there is no entry shown for "income taxes." It is therefore my position and belief that there is no law requiring me "to pay" income taxes, and this is certainly a "relevant issue" that is appropriately raised at a CDP hearing – since, if the appeals officer can not identify any statute that requires me "to pay" income taxes, how can he recommend that the IRS seize my property in connection with a tax the payment for which he can not find listed in any code section (law)?

If, on the other hand, the appeals officer can point out such a statute at my CDP hearing, I will make arrangements to pay whatever amount the appeals officer claims is due and owing for my 1999 income taxes. - and the IRS won't have to resort to seizures under Section 6331 to get it. Nor will there be any need for me to appeal an adverse determination to Tax Court. So the only reason for the appeals officer not to identify any such statute is because no such statute exists.

---

[2] In *Fretag v.C.I.R.,* 111 S.Ct. 2631(1991) the Commissioner argued that the Tax Court was not a court of law but only "a department with the chief judge as its head." However in a 5 to 4 decision, the majority ruled that the Tax Court while being "a court of record" , could be considered a "court of law" but only "within the meaning of the Appointments Clause" of the Constitution. However in a scathing dissent written by Justice Scalia (in which 3 Justices concurred), he observed that, " how the Tax Court could be considered a court of law even for this limited purpose was " a complete mystery" to him." And he further noted, "that the Tax Court, like the Internal Revenue Service, the FCC and National Labor Relations Board, exercises (merely) executive power."

**6) It is my position and belief that No law authorizes the IRS to claim that I owe more in income taxes than the "zero" I reported on my 1999 income tax return.**

In addition, I "determined" that I owed no income tax for 1999 and "made" a return reflecting that determination as provided by Section 6201(a)(1). Section 6201(a)(2)(A) further provides that with respect to taxes **"payable by stamp,"** the Secretary is authorized "to estimate the amount of tax which has been omitted to be paid" **by stamp.** However, there is no provision in Code Section 6201 **or any other Code Section** that authorizes the Secretary (let alone the IRS) to similarly "estimate the amount of tax" which I allegedly omitted from my return. Therefore it is my contention that no law authorizes the Secretary (let alone any IRS employee) to determine that I owe more in income taxes than the "zero" I reported on my 1999 income tax return. If the appeals officer believes otherwise, then I challenge him to:

   a) Produce the statute that authorizes the Secretary to estimate the amount of taxes I omitted from my 1999 income tax return as the Secretary is authorized to do with respect to taxes **payable by stamp** as provided in Code Section 6201(a)(2)(A).
   b) Produce the Delegation Order from the Secretary that delegated any such authority to the IRS, and
   c) Produce the **legislative** regulation that requires me to pay attention to any such IRS employee "determination."

**7) The IRS Decoding Manual provides additional proof that I cannot owe more in 1999 income taxes than the "zero" shown on my 1999 income tax return**

In addition to all of the above, I have attached as Exhibit G excerpts from the IRS Decoding Manual referred to as "ADP AND IDRS" Document 6209, Cat No. 614620. It clearly establishes that a Transaction Code 150 (TC 150) means, "A tax liability assessed from the original return (which) establishes a tax module." Obviously no "tax module" could have been established from my "original return" since no tax "liability" was shown on that return, therefore no "amount" could have been assessed from my "original return." Therefore no TC 150 entry can legally appear on any IRS record involving me or my 1999 income tax return.

Further, a Transaction Code 300 (providing for an "additional tax") is shown as being appropriate only when "a tax module ... contains a TC 150 transaction." Since (as explained above) no TC 150 could have been legally entered with respect to any record involving me and 1999 income taxes, no "additional taxes" other than the "zero" shown on my 1999 return can apply to me and 1999 income taxes. So any claim by any IRS employee that I can owe any more in 1999 income taxes than the "zero" shown on my 1999 return is fraudulent on a variety of grounds. This is what "voluntary compliance" and "self-assessment" is all about!

F- 8

**8.** <u>**The Secretary has not authorized any action for the collection of taxes and penalties as required by 26 USC 7401.**</u>

In addition to all the issues raised herein, the *Secretary has not authorized* or sanctioned any action to collect by distraint any income taxes or penalties that I allegedly owe for the year 1999.  So apart from violating a number of statutes as contained in paragraph 1-7 above, any attempt by the IRS to collect by distraint the taxes at issue without getting the authorization from the Secretary as required by 26 USC 7401 will constitute a blatant violation of that law.

**9.** <u>**The Attorney General has not directed that any action against me for the enforced collection of any income taxes and penalties for the year 1999 "be commenced" as is required by 26 USC 7401.**</u>

In addition to all of the above, the Attorney General has not authorized or sanctioned any action to collect by distraint any income taxes or penalties that I allegedly owe for the year 1999.  So apart from violating a number of statutes as contained in paragraph 1-8 above, any attempt by the IRS to collect by distraint the taxes or penalty at issue without getting the authorization from the Attorney General as required by 26 USC 7401 will constitute a blatant violation of that statute.

**10.** <u>**Sections 6331, 7701 and 7608 clearly establish that IRS Revenue Officers or Revenue Agents have no authority to seize property in payment of income taxes. This, therefore, is to put all such agents on notice that any attempt on their part to do so, will expose them to personnel lawsuits since they will be operating outside the scope of their legal authority if they attempt to do so.**</u>

Section 6331 of the Internal Revenue Code clearly provides that it shall only be "**lawful**

For **the Secretary** to collect such tax...by levy..." (Emphasis added).  Sections 7701(a)(11)(B) and 7701(a)(12)(A) provide that the term Secretary as used in Code Section 6331 "means the Secretary of the Treasury or his delegate" or one who has been delegated "indirectly by one or more re-delegations of authority."  It should be noted that nowhere in Section 6331 is the IRS even mentioned.  Therefore it is clear that no IRS employee is authorized by the provisions of Code Section 6331 to seize any property by either levy or notice of levy.  Before an IRS Revenue Agent or Revenue Officer could have such authority, he would have to be delegated with such authority by the Secretary.  However, it is obvious that the Secretary has not delegated any such authority to IRS Revenue Officers or Agents for at least two reasons.  One reason is that Code Section 7608 entitled "Authority of internal revenue enforcement officers" provides in relevant subpart (a) that, "Any investigator, agent, or other internal revenue officer **by whatever term designated,** whom the Secretary charges with...enforcing.... (The)...seizure, or forfeiture provisions **of subtitle E.**.... may  (In paragraph #4)...make seizures." (Emphasis added)   However, paragraph 7608(b) is captioned "Enforcement of laws relating to internal revenue other than subtitle E."  And the only IRS employee authorized

to do anything in connection with subtitles other than subtitle E are "criminal investigators" and not Revenue Officers or Revenue Agents. It is clear that pursuant to Code Section 7608 Revenue Agents and Revenue Officers can only be involved in the enforcement of subtitle E taxes, while only Special Agents ( Criminal Investigators) can be involved in the enforcement of subtitle A taxes, provided they are delegated with such authority by the Secretary.

Additionally, it is crystal clear that the enforcement provisions of Code Sections 6331 and 7608 can only apply to liquor, tobacco, firearms and other excise taxes, since the Parallel Tables of Authority confirm that the implementing regulations for both Code Sections are in CFR 27 and not in CFR 26. The implementing regulation for Code Section 6331 is shown to be in CFR 27 Part70 while the implementing regulation for 7608 is shown to be in CFR 27 Parts 70, 170, and 296. Since there are no implementing, legislative regulations for either section in CFR 26, both Code Sections *are legally benign* and have no force and effect of law as far as income taxes are concerned. Therefore, Revenue Agents and Revenue Officers *clearly* have no authority to size property in connection with income taxes and any attempt by them to do so would constitute criminal violations of Code Section 7214 and expose them to civil damages under a variety of federal and state statutes.

I strongly suggest you or the Appeals Officer that will conduct my hearing, read it thoroughly in preparation of ensuring that the hearing is both time conserving and productive for both parties, as you indicated in your letter.

I would further point out that Treasury Reg. 601.106(f)(1) states: "An exaction by the U.S. Government, which is not based upon law, statutory or otherwise, **is a taking of property without due process of law**, in violation of the Fifth Amendment to the U.S. Constitution. Accordingly, an Appeals representative in his or her conclusions of fact or application of law shall **hew to the law**..." (Emphasis added)

In addition to all of the above, if the IRS should attempt to seize any of my property by distraint they will be exposing the federal government to a 7433 law suit, since any such seizure (as all of the above should make clear) will have been done "recklessly or intentionally" in violation of no less then the following 12 statutes, Code Sections: 6001, 6011, 6201, 6203, 6212, 6303, 6330, 6331, 7214, 7401, 7608, and 7701 as well as Treasury Reg. 601.106(f).

I strongly suggest you or the Appeals Officer that will conduct my hearing, read this entire document thoroughly in preparation of ensuring that my hearing is fair and unbiased, as well as both time conserving and productive for both parties, as you indicated in your letter, supra.

F- 10

I must again remind you and/or the Appeals Officer conducting my hearing, that I will be tape recording the CDPH. I will also have a court reporter and a licensed civil attorney/witness with me at the hearing. I am aware that I need to execute an IRS Power of Attorney if I decide that he is to represent me.

Attached after the closing signature of this letter is attachments A-D, supra. They will be page numbers 12-15 with page 15 being the last and final page of this document.

Sincerely,

Jan A. Lindsey
Taxpayer

F— 11

Case 2:02-cv-00401-KJD-RJJ   Document 1-1373926   Filed 03/21/02   Page 85 of 98

*A.*

*Salvage Wm. Roths Book*

managers whose first priority is not necessarily to do what's right, but rather what's expedient and beneficial to their own success. Within the quota-driven Collections Division, a resourceful revenue officer had seized $50,000 belonging to TSA, and the IRS was not about to give the money back.

Compounding its duplicity, the Internal Revenue Service never disclosed the Justice Department's letter to Savage or his attorneys. In fact, the opinion surfaced only during the course of our investigation, long after the agency determined to drag the small businessman through a prolonged and costly battle, perhaps anticipating that with limited resources pitted against the inexhaustible legal apparatus of the federal government, Savage would either fold or be forced out of business.

Beyond the money seized by the revenue officer, Tom Savage and his wife spent another $50,000 in legal fees. Unable to sleep, and with their energy concentrated on finding a semblance of justice from their government, they lost $600,000 in work that they had to decline due to lack of time and resources. Faced with a win-at-all-costs attitude on the part of the agency, Savage—without the knowledge that the Justice Department attorneys had advised the IRS that what it had done was illegal—made the decision to settle, allowing the Service to keep their money after a federal judge explained that to continue the battle in court would run into hundreds of thousands of dollars in legal costs. Tom and Frances Savage simply could not afford to continue. "As much as it offended my wife and me," Savage testified, "we chose to settle the case. We wanted to pursue it to the end, but to do so would have destroyed us."

## Taxpayers' Rights at Risk

It would be comforting to believe that Tom Savage's nightmare, as well as the others I've documented so far, constitute

*A.*

rare exceptions—aberrant behavior by a few self-serving agency employees—but recent internal investigations by the Internal Revenue Service itself admit that far too many of the countless assessments, seizures, levies, and liens that the IRS executes each year are inappropriate and in open violation of the law. Mistakes and abuses within the system are not rare. The overemphasis on statistics encourages—and some revenue officers even say *forces*—employees to do whatever is necessary to keep their numbers up. Citing our September hearings as impetus, Commissioner Rossotti initiated a series of internal audits in the final months of 1997. What he and his agency discovered was that the IRS has created an environment driven by statistical accomplishments that places taxpayer rights at risk.

According to the internal review:

• The IRS' corporate performance measurement system, through a statistical ranking of the districts, encouraged the collection field function to emphasize enforcement results without corresponding emphasis on case quality, adherence to law, policy, and procedure; or taxpayer rights.

• References to enforcement statistics were contained in 130 of 340 group manager evaluations. The sampled data suggest that more than a third of all group managers throughout America are being judged by the number of cases their agents and officers close, as well as the amount of money that is collected through assessments, levies, liens, and seizures.

• Approximately one fourth of the revenue officers and group managers stated that they feel pressure to achieve enforcement goals and take enforcement actions, even as national and regional oversight of the use of enforcement statistics and goals is limited.

*"TREA Reg"*
*REG'S 601.102-601.106*

**§ 601.102 Classification of taxes collected by the Internal Revenue Service.**

(a) *Principal divisions.* Internal revenue taxes fall generally into the following principal divisions:

*(1)* Taxes collected by assessment.

*(2)* Taxes collected by means of revenue stamps.

(b) *Assessed taxes.* Taxes collected principally by assessment fall into the following two main classes:

*(1)* Taxes within the jurisdiction of the U.S. Tax Court. These include:

(i) Income and profits taxes imposed by chapters 1 and 2 of the 1939 Code and taxes imposed by subtitle A of the 1954 Code, relating to income taxes.

(ii) Estate taxes imposed by chapter 3 of the 1939 Code and chapter 11 of the 1954 Code.

(iii) Gift tax imposed by chapter 4 of the 1939 Code and chapter 12 of the 1954 Code.

. (iv) The tax on generation skipping transfers imposed by chapter 13 of the 1954 Code.

(v) Taxes imposed by chapters 41 through 44 of the 1954 Code.

*(2)* Taxes not within the jurisdiction of the U.S. Tax Court. Taxes not imposed by chapter 1, 2, 3, or 4 of the 1939 Code or subtitle A or chapter 11 or 12 of the 1954 Code are within this class, such as:

(i) Employment taxes.

(ii) Miscellaneous excise taxes collected by return.

*(3)* The difference between these two main classes is that only taxes described in subparagraph (1) of this paragraph, i.e., those within the jurisdiction of the Tax Court, may be contested before an independent tribunal prior to payment. Taxes of both classes may be contested by first making payment, filing claim for refund, and then bringing suit to recover if the claim is disallowed or no decision is rendered thereon within six months.

11/22/69, amend 5/6/70, 2/13/73, 1/31/80, 5/8/81, T.D. 8685, 11/8/96.

**§ 601.103 Summary of general tax procedure.**

(a) *Collection procedure.* The Federal tax system is basically one of self-assessment. In general each taxpayer (or person required to collect and pay over the tax) is required
. . .

(c) *Disputed liability.* (1) *General.* The taxpayer is given an opportunity to request that the case be considered by an Appeals Office provided that office has jurisdiction (see . § 601.106(a)(3)). If the taxpayer requests such consideration, the case will be referred to the Appeals Office, which will afford the taxpayer the opportunity for a conference. The determination of tax liability by the Appeals Office is final insofar as the taxpayer's appeal rights within the Service are concerned. Upon protest of cases under the jurisdiction of the Director, Foreign Operations District, exclusive settlement authority is vested in the Appeals Office having jurisdiction of the place where the taxpayer requests the conference. If the taxpayer does not specify a location for the conference, or if the location specified is outside the territorial limits of the United States, the Washington, D.C. Appeals Office of the Mid-Atlantic Region assumes jurisdiction.

Regs. § 601.105(c)

(c) *District procedure.* (1) *Office examination.* (i) In a correspondence examination the taxpayer is furnished with a report of the examiner's findings by a form letter. The taxpayer is asked to sign and return an agreement if the taxpayer accepts the findings. The letter also provides a detailed explanation of the alternatives available if the taxpayer does not accept the findings, including consideration of the case by an Appeals office, and requests the taxpayer to inform the district director, within the specified period, of the choice of action. An Appeals office conference will be granted to the taxpayer upon request without submission of a written protest.

Regs. § 601.106(f)

(f) *Conference and practice requirements.* Practice and conference procedure before the Appeals is governed by Treasury Department Circular 230 as amended (31 CFR Part 10), and the requirements of Subpart E of this part. In addition to such rules but not in modification of them, the following rules are also applicable to practice before the Appeals:

*(1)* Rule I. An exaction by the U.S. Government, which is not based upon law, statutory or otherwise, is a taking of property without due process of law, in violation of the Fifth. Amendment to the U.S. Constitution. Accordingly, an Appeals representative in his or her conclusions of fact or application of the law, shall hew to the law and the recognized standards of legal construction. It shall be his or her duty to determine the correct amount of the tax, with strict impartiality as between the taxpayer and the Government, and without favoritism or discrimination as between taxpayers.

```
The Government must follow its own
regulations.  Actions by an agency
of the executive branch in violation
of its own regulations are illegal
and void.
```







DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

JAN 2 4 1996

Dear

This is in response to your January 4, 1996, letter asking how you can tell what category a particular regulation falls.

Regulations are authorized by Internal Revenue Code section 7805. They constitute the primary source for guidance on the Treasury's position regarding the interpretation of the Code. Regulations have, generally, been classified into three broad categories: legislative, interpretative, and procedural.

Legislative regulations are those for which the Service is specifically authorized by the Code to prescribe the operating rules. Generally, legislative regulations have the force and effect of law unless the regulation exceeds the scope of the delegated power, is contrary to the statute, or is unreasonable.

Interpretative regulations explain the Service's position on the various sections of the Code. Although interpretative regulations do not have the force and effect of law, the courts customarily accord them substantial weight.

Procedural regulations are considered to be directive rather than mandatory, and thus, do not have the force and effect of law. The purpose of procedural regulations is to outline both for public consumption and internal guidance those rules which control the operation of the Internal Revenue Service in carrying out its prime function of administering and enforcing the Internal Revenue laws.

I hope that this information will be helpful to you.

Sincerely,

Cheryl Kordick, Chief
Assistance Section

Fr14

IRS SPD No. 90321 **/**



## Internal Revenue Service
## Standard Position Description

*Classification:* GS–526–9
*Classification Title:* Tax Technician
*Organizational Title:* Tax Auditor
*Location:* District Examination Division
*FLSA Status:* Exempt – NON
*Merit Pay:* No
*Bargaining Unit Status:* BU
*General Skill:* 1AG
*Skill:* BBN
*Shred:* 5FV
*Subshred:*
*Percentage:* 100%
*Competition Level Code:*

*Duties and Responsibilities Approved:* 8-29-78

/s/ John L. Wedick, Jr.
Director, Examination Division

*Classification Approved:* 3/19/79

/s/ Paul D. Howland
Chief, Position Management Branch

I certify that this is an accurate statement of the major duties and responsibilities of this position and its organizational relationships, and that the position is necessary to carry out government functions for which I am responsible. This certification is made with the knowledge that this information is to be used for statutory purposes relating to appointment and payment of public funds, and that false or misleading statements may constitute violations of such statutes or their implementing regulations.

_____
(Signature of immediate supervisor)    (Date)

All other levels of supervision which propose or approve official statements of duties and responsibilities are attesting to the same effect as the immediate supervisor.

The classification of this position may be appealed. Published Standards or other information upon which the classification is based may be reviewed. Information may be obtained from your supervisor or your Personnel Office.

This SPD had been previously published in form IRM Handbook 1341. It is being reprinted with no substantive changes. However, obsolete organization titles have been corrected; discriminatory language removed; and SPD No. updated to the 6-digit format.

## DESCRIPTION

### DUTIES

. Examines tax liability issues from assigned case which include individual, and fiduciary income tax returns, both non-business and business, and some employment, estate, gift, and excise tax returns.
Reviews available data pertaining to the taxpayer.
Identifies potential tax issues.
Explores issues to determine nature, scope, direction, and method of inquiry.
Develops necessary information and evidence through correspondence, interview, or field examination. May use indirect examination methods.
► Evaluates evidence and information including alternative courses of action.
Reaches final decision on tax liability and explains taxpayer the basis for any adjustments.
Fully advises taxpayer of all appeal rights and secures agreement of taxpayer to final decision.
► As required, furnishes assistance to the public in answering questions related to tax matters.

### 1. Knowledge Required by the Position

Knowledge of basic accounting principles, practice and terminology.
Extensive knowledge of tax code and regulations.
Skill in the use of fact-finding and analytical techniques.
Ability to tactfully and effectively conduct interviews with taxpayers, some of whom may be negative, hostile or emotional.
. Ability to communicate in writing.
Ability to evaluate information.
Familiarity with common business and farming practices in the local area.
Ability to detect and extract pertinent information from a variety of records and documents.

### 2. Supervisory Controls

Work is supervised by the Group Manager. Works dependently in most cases, requesting advice or assistance only as needed on unusually complex or sensitive situations or on precedent setting matters. Into Group Manager of workload and of special problems encountered in examinations, but otherwise plans executes work independently. Unagreed cases are :

Jan A. Lindsey                      **COPY**
Date: August 16, 2001
1627 Clarksville Ct.
Henderson, NV 89052

Anthony Martinez                    Re: IRS Letter dated June 13, 2001
Employee ID # 85-00764                      AP: SB: ALB: AM
IRS Appeals Officer                 Collection Due Process Hearing
5338 Montgomery, N.E.                        (CDPH)
Albuquerque, NM 87109

Dear Mr. Martinez,

Will you please afford me a professional courtesy and respond in writing to my request
for rescheduling of my CDP hearing. I desire a date and time in Las Vegas, NV.   You
gave me 14 days to respond to your letter dated June 13, 2001.  I met your arbitrary
deadline.  I now request that you respond within 14 days of the date of this letter or I
must assume that you are disregarding your duty as a public servant, to abide by the
stated mission of the IRS,.....*by applying the **tax law** with integrity and fairness to all*.

It has been 15 months since I filed my return for the 1999 tax year and requested a refund
of all monies withheld in error. With this letter I am demanding that you or an IRS
employee in authority, reconsider your unlawful position in this matter and that the IRS
abide by the IRC section that requires it to refund overpayments or withheld funds that
were made in error by the taxpayer. I believe that the time for resolving my case, i.e.
bringing it to a *lawful and fair* conclusion, without further time consuming administrative
procedures, has long passed.

I am enclosing a copy of a letter from Senator KAY BAILEY HUTCHISON, who, unlike
the IRS, responded to my questions about the Income Tax laws. Note that the Senator
states that under the IRS reform bill (1998) the IRS has the burden of proof for taxpayers
in court to prove (*that a taxpayer has an income tax liability*) and, that the IRS is
restricted (not lawfully authorized) from imposing interest and *penalties* retroactively.

I await your prompt and courteous reply with answers to the legal and procedural
questions set forth in my letter dated June 22, 2001.  In lieu of that, a complete refund, as
requested in my 1999 return, would bring closure to my case.

Sincerely,

Jan A. Lindsey
(encl.- US Senate Letter)

PS:  Please be advised and note in my file that I speak and correspond for myself as well
as my wife, Marsha M. Lindsey, for whom I have unequivocal Power of Attorney in all
matters involving the IRS.

EXHIBIT Q-1



KAY BAILEY HUTCHISON
TEXAS

COMMITTEES:
APPROPRIATIONS
COMMERCE, SCIENCE,
AND TRANSPORTATION
RULES AND ADMINISTRATION
ENVIRONMENT AND PUBLIC WORKS

# United States Senate

WASHINGTON, DC 20510-4304

December 6, 2000

Jan A. Lindsey
47 West Misty Morning Tree
Spring, Texas 77381-3859

Dear Jan:

Thank you for contacting me regarding the Internal Revenue Service and its treatment of taxpayers. The stories from the witnesses at Congressional hearings, and from fellow Texans, have certainly highlighted the need for drastic reforms at the IRS.

As you may know, H.R. 2676, the Internal Revenue Service Restructuring and Reform Act, passed both Houses of Congress. H.R. 2676 became public law on July 22, 1998, when it was signed into law by the President. The bill takes apart the IRS' traditional, high-handed approach to collecting taxes and puts it back together in a way that better serves the American people.

The IRS reform bill creates a new, independent board of experts to oversee the IRS and ensure that it not only modernizes but also improves its taxpayer services. In addition, the bill gives the taxpayer improved rights by overhauling the innocent spouse relief provision of the current code to limit an individual spouse's liability for a joint return to the liability attributable to his or her income. The burden of proof for taxpayers in tax court will also be shifted from the taxpayer to the IRS. I am also pleased that the legislation passed by the Senate includes a provision that restricts the ability of the IRS to assess interest and penalties retroactively.

In addition to restructuring the IRS to protect the rights of taxpayers, I also support simplifying our federal income tax system. Several flat tax proposals have been put forward, as well as an alternative to abolish the income tax and substitute a national sales tax. However, before Congress commits to a particular plan, consequences for middle class taxpayers must be fully understood: the flat tax rate itself, personal/family exemptions, and treatment of deductions for home mortgage interest and charitable contributions.

We must fully develop the alternatives, so that we will have all the information to move forward with significant tax reform.

I appreciated hearing from you and hope you will not hesitate to contact me again on any other issue of concern to you.

Sincerely,

Kay Bailey Hutchison

KBH\dxp
L000683374

EXHIBIT G-2

Web=http://hutchison.senate.gov

**United States**  **of America**

**Department of the Treasury**

**Internal Revenue Service**

_____

Date:   October 1, 2001

CERTIFICATE OF OFFICIAL RECORD

I certify that the annexed:    is a true Form 4340, Certificate of Assessments, Payments and Other Specified Matters for Jan A. Lindsey, SSN: 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, for Civil Penalty, for tax period December 31, 1999, consisting of two pages

under the custody of this office.

IN WITNESS WHEREOF, I have hereunto set my hand, and caused the seal of this office to be affixed, on the day and year first above written.

By direction of the Secretary of the Treasury:

_Linda Weiskopf_

Linda Weiskopf, Director
Ogden Submission Processing Center
By:  S. Ted Elder, Resident Agent in Charge
Ogden Fraud Detection Center

_EXHIBIT H-1_

Catalog Number 19002E

*U.S. GPO: 1997-417-690/61741

Form **2866** (Rev. 09-97)

CERTIFICATE OF ASS  SMENTS, PAYMENTS, AND OTH  SPECIFIED MATTERS
--------------------------------------------------------------------------------

JAN A LINDSEY                          EIN/SSN: 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


TYPE OF TAX: CIVIL PENALTY
FORM: CVPN      PERIOD ENDING: DEC  1999

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|----------------------------|-------------------------------------|-----------------------------|----------------------------------|
| | MISCELLANEOUS PENALTY IRC 6702 PENALTY FOR FILING FRIVOLOUS INCOME TAX RETURN 18254-610-52025-0  200036 | 500.00 | | 09-18-2000 |
| | ADDITIONAL TAX ASSESSED 18254-610-52025-0  200036 | 0.00 | | 09-18-2000 |
| 12-14-2000 | INTENT TO LEVY COLLECTION DUE PROCESS LEVY NOTICE ISSUED | | | |
| 01-09-2001 | LEGAL/BANKRUPTCY SUIT PENDING | | | |
| 12-26-2000 | INTENT TO LEVY COLLECTION DUE PROCESS RETURN RECEIPT SIGNED | | | |
| 09-18-2000 | Statutory Notice of Balance Due | | | |
| 11-13-2000 | Statutory Notice of Intent to Levy | | | |

FORM 4340  (REV. 10-2000)              PAGE    1

# 4-2

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAN A LINDSEY                         EIN/SSN: 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


TYPE OF TAX: CIVIL PENALTY
FORM: CVPN       PERIOD ENDING: DEC  1999
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


BALANCE        500.00


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
I CERTIFY THAT THE FOREGOING TRANSCRIPT OF THE TAXPAYER NAMED ABOVE IN RESPECT
TO THE TAXES SPECIFIED IS A TRUE AND COMPLETE TRANSCRIPT FOR THE PERIOD STATED,
AND ALL ASSESSMENTS, ABATEMENTS, CREDITS, REFUNDS, AND ADVANCE OR UNIDENTIFIED
PAYMENTS, AND THE ASSESSED BALANCE RELATING THERETO, AS DISCLOSED BY THE
RECORDS OF THIS OFFICE AS OF THE ACCOUNT STATUS DATE ARE SHOWN THEREIN.  I
FURTHER CERTIFY THAT THE OTHER SPECIFIED MATTERS SET FORTH IN THIS TRANSCRIPT
APPEAR IN THE OFFICIAL RECORDS OF THE INTERNAL REVENUE SERVICE.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
SIGNATURE OF CERTIFYING OFFICER: _Wilma S. Higley_

PRINT NAME:_____Wilma S. Higley_____

TITLE:_____Supervisory Investigative Analyst_____

LOCAL DELEGATION ORDER:____CS-OC 2_____


LOCATION: INTERNAL REVENUE SERVICE
          OGDEN, UT

          ACCOUNT STATUS DATE 10/01/2001

FORM 4340  (REV. 10-2000)              PAGE     2

H-3

Internal Revenue Servic.
Appeals Office
4750 W Oakey Blvd
8000LVG
Las Vegas, NV 89102

Date: September 27, 2001

Jan A. Lindsey
1627 Clarksville Court
Henderson, NV 89052

*Dec 10/11/01*
*JAL*

Depar    nt of The Treasury
Small Business / Self Employed
**Person to Contact:**
  Renee Swall  ID#88-55073
**Telephone Numbers:**
  (702) 455-1111
  FAX (702) 455-1175
**Refer Reply:** AP:SB:LV:RS
**In Re:** Due Process – Levy
**Tax Period(s) Ended:**
  Civil Penalty, Dec. 31, 1999
**Date and Time of Hearing:**
  October 18, 2001 Thursday
  At 3:00 p.m.
**Place:**
  Internal Revenue Service
  4750 W. Oakey Blvd./Appeals
  Las Vegas, NV. 89102

Dear Mr. Lindsey:

I have scheduled the hearing you requested on this case for the date and time shown above. Please call me to confirm that the above time and date are convenient. If they are not convenient, I will be glad to arrange another time and date.

Appeals' jurisdiction to hear your case is specified in the Internal Revenue code, Sections 6320 and 6330. You may raise as an issue the validity of the underlying assessment only if you did not receive a statutory notice of deficiency or otherwise have an earlier opportunity to dispute the assessment. This hearing will focus only upon the civil penalty assessment for the period ending December 31, 1999 as set out in the Letter 1058 that you received. Appeals will consider the appropriateness of the proposed collection action, spousal defenses, and collection alternatives. If you wish to propose collection alternatives such as an installment agreement, you must have filed all returns due to date, and you will need to complete and submit current financial statements along with verification.

I have reviewed the correspondence you attached to your request for the collection due process hearing and would like to point out that the courts have previously ruled against your arguments, and in some instances, have imposed sanctions. I am hopeful that you will wish to discuss legitimate issues and alternatives for resolving your case at the upcoming hearing.

Please note that if you miss the scheduled hearing, or if I do not hear from you, Appeals may make a determination based on the information in the collection administrative file. A determination letter would then be issued to you on the basis of that review. Please call me if you have any questions or need additional information.

Sincerely,

*Renee Swall*

Renee Swall
Settlement Officer

EXHIBIT I-1

COPY

Jan A. Lindsey                                      Date: August 16, 2001
1627 Clarksville Ct.
Henderson, NV 89052                    *via Registered Mail*

Marlene Renee Swall                    Re: IRS Letter dated June 13, 2001
Employee ID # 88-55073                        AP: SB: ALB: AM
IRS Appeals/Settlement Officer         Collection/ Due Process Hearing
Appeals Office-8000LVG                           (CDPH)
4750 W. Oakey Blvd.
Las Vegas, NV 89102

Re:  M y letter to Anthony Martinez, IRS Appeals, AQ,  8/16/01 and my telcall to you
Oct. 4, 2001.

Dear Ms. Swall,

I am in receipt of your letter dated September 27, 2001 and accept the hearing date
offered of October 18, 2001.  In our telcall conversation you agreed to 2:30 PM at my
request and I appreciate the accommodation.

You state in your letter that I have the right to raise the issue of the **validity of the
underlying assessment.**   I am confused as to what you are referring to in this statement.
Is it the Civil Penalty that you are referring to?  I have not been able to find a code
section with implementing legislative regulation that allows the IRS to "assess" a penalty.
I have never received an assessment or statutory notice and demand for a tax due for the
1999 tax year. I have not received a statutory notice of deficiency.   Please be advised
that I am very familiar with the provisions of the IRC, Code Section 6330 and its
implementing regulation, (301.6330).  Code Section 6330 (c) (2) (B) as the law is written
and cited, allows me the unequivocal right to challenge the existence *of the underlying
tax liability.*    And that is exactly what I will be doing at the hearing.

*per letter.
1058*

In regards to the $500." frivolous" Civil Penalty determination and claim by IRS that I
owe such a sum, it is my belief and position from reading and study of Title 26, that there
is no lawful or legislative regulation implementing the code section that the IRS cites as   *(6702 )*
IRS authority for *imposing* such a penalty.  Be advised that I will immediately pay over
to the Treasury the sum of  $500 plus accrued interest provided you can  " ***show me the
legislative regulation that implements a code section (and that code section) that
authorizes   the IRS to impose, demand and collect such an amount***"

Sincerely,

Jan A. Lindsey

PS:  Please be advised and note in my file that I speak and correspond for myself as well
as my wife, Marsha M. Lindsey, for whom I have unequivocal Power of Attorney in all
matters involving the IRS.

EXHIBIT I-2

Date:
DEC. 14, 2000

Taxpayer Identifying Number:
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    V 04

Contact Telephone Number:

TOLL FREE:    1-800-829-7650
MON-FRI:      8:00AM-8:00PM

JAN A LINDSEY
47 W MISTY MORNING TRCE
THE WOODLANDS  TX   77381-3859478

Department of the Treasury
Internal Revenue Service
P.O. BOX 149047
AUSTIN, TX 78714

## Final Notice - Notice of Intent to Levy and Notice of Your Right to a Hearing
## Please Respond Immediately

You have not paid your federal tax. We previously asked you to pay but we still haven't received full payment. This letter is your notice of our intent to levy under Internal Revenue Code Section (IRC) 6331 and your notice of a right to receive Appeals consideration under IRC 6330. PLEASE CALL US IMMEDIATELY at one of the telephone numbers shown above if you recently made a payment or can't pay the amount you owe.

We may file a Notice of Federal Tax Lien at any time to protect the government's interest. A lien is public notice to your creditors that the government has a right to your interests in your current assets and assets you acquire after we file a lien.

If you don't pay this amount, make alternative arrangements to pay, or request Appeals consideration within 30 days from the date of this letter, we may take your property or rights to property such as real estate, automobiles, business assets, bank accounts, wages, commissions, and other income to collect the amount you owe. See the enclosed Publication 594, Understanding the Collection Process, for additional information about this and see Publication 1660 which explains your right to a hearing. The enclosed Form 12153 is used to request a hearing.

To prevent enforced collection actions, please send us full payment today for the amount you owe shown on the back of this letter. Make your check or money order payable to the United States Treasury. Write your social security number or employer identification number and the tax year on your payment. Send your payment in the enclosed envelope with a copy of this letter.

Enclosures:
Copy of letter
Form 12153
Publication 594
Publication 1660
Envelope

*Barbara J. Strudel*

Chief, Automated Collection Branch

*462669325103*

EXHIBIT J-1

Letter 1058 (Rev. 01-1999)(LT-11)

## Account Summary        JAN A LINDSEY                     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

| Type of Tax | Period Ending | Assessed Balance | Statutory Additions | Total |
|-------------|---------------|------------------|---------------------|-------|
| CIVPEN | 12-31-1999 | $ 500.00 | $ 13.21 | $ 513.21 |

|  |  | Total Amount Due $ | 513.21 |
|---|---|---|---|

| Type of Tax | Period Ending | Name of Return |
|-------------|---------------|----------------|
|  |  |  |

EXHIBIT J-2



**Form 17A**

Statement of
Income Tax
Due

CHARLES H LEHIGH
1415 WE    MAIN
ELDORADO   CK       AUG 15.610100 55
OH 22753              1954  1853
INT TO 8/15/55
IRC OF 1939 SEC 6081 IRC 1954 ---

DISTRICT DIRECTOR'S COPY

| | |
|---|---|
| AUG 55 | 24201296 |
| AUG 55 | 24098610 |
| OC 55 | 14315.92 |
| 55 | 21400.78 |

304,225.768

This bill for the amount shown as "Balance Due" is being
sent to you in accordance with law.   The law also requires that
interest at 6 percent per year until date of payment be added
unless this amount is paid within 10 days from date of this notice.
Amounts shown in "Assessment" above are for tax unless identi-
fied as penalty by letter "P" or interest by letter "I."

$7.88

Dated   Aug 16 1955

Please return this notice with remittance to District Director of
Internal Revenue at

Little Rock, Arkansas

TV FORM 16



# Your Rights
## AS A TAXPAYER

Start here
- First notice and demand for unpaid tax

  10 days later
- Enforcement authority arises (a notice of a lien may be filed)
- Up to 3 more notices sent over a period of time asking for payment
- Notice of intent to levy is sent by certified mail (final notice)

  30 days later
- Enforcement action to collect the tax begins (levy, seizure, etc.)

Department of the Treasury
Internal Revenue Service
Publication 1 (Rev. 10-90)

Cat. No. 64731W

---

## INTERNAL REVENUE.

(T. D. 1995.)

*Assessed taxes—Notice and demand, Form 17.*

Notice of and demand for assessed taxes to be issued promptly to secure tax lien, penalty, and interest in case of nonpayment.

TREASURY DEPARTMENT,
OFFICE OF COMMISSIONER OF INTERNAL REVENUE,
*Washington, D. C., June 12, 1914.*

*To collectors of internal revenue:*

It appears that certain collectors hold that notice of assessment and demand, Form 17, is not necessary to create a liability to 5 per cent penalty and interest at 1 per cent per month in the case of income tax remaining unpaid after June 30 or other due date.   This view as to the requirements of the law is clearly wrong and contrary to the instructions (art. 197, Regs., 33) issued on the subject.

The necessity of issuing Form 17 is twofold—first, to determine the date when 5 per cent penalty accrues and interest at 1 per cent per month begins to run, and, second, to complete the Government's lien on property belonging to the taxpayer.

In special excise and income-tax assessments a notice on Form 647 is required to be given in all cases where the required return is filed in due time.   This, however, is simply a preliminary notice of assessment, to be followed, in case of nonpayment, by a formal notice and demand which the law clearly contemplates and which the courts hold to be necessary before the delinquent taxpayer becomes chargeable with penalty and interest.

In all cases, therefore, where an assessed tax remains unpaid after it becomes due a notice on Form 17 should be at once issued, to be followed, when necessary, by Forms 21 and 69, in their order.   The fact that a claim for abatement is pending or the tax is in litigation does not relieve the collector from issuing the notices, demands, etc., required by law.

A misunderstanding on the part of certain collectors as to these requirements has occasioned a considerable loss to the Government of penalty and interest, especially where claims for abatement were pending.

W. H. OSBORN,
*Commissioner of Internal Revenue.*

EXHIBIT K